Roland Ralph WILEY, III,
Plaintiff-Appellant,

v.

Gary RAYL and the Attorney General
of the State of Kansas,
Defendants-Appellees.

No. 83–1663.

United States Court of Appeals,
Tenth Circuit.

July 5, 1985.

Barrett, Circuit Judge, filed concurring opinion.

**680**

Roland Ralph Wiley, III, plaintiff-appellant, pro se.

Timothy G. Madden, Asst. Atty. Gen. of the State of Kan., Topeka, Kan., for defendants-appellees.

Before BARRETT, McKAY, and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

This appeal, submitted on the briefs pursuant to Tenth Cir.R. 9, is from the district court's order denying petitioner Roland Wiley, III's writ of habeas corpus under 28 U.S.C. § 2254. Wiley challenges the constitutionality of a jury instruction regarding criminal intent given at his trial in a Kansas state court in which he was convicted of rape and aggravated kidnapping. We must decide whether the intent instruction violated the fundamental principle that the state must prove every element of a criminal offense beyond a reasonable doubt as defined in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), and reiterated in *Francis v. Franklin*, —— U.S. ——, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). The challenge only applies to the kidnapping conviction; under Kansas law specific intent is an element of the crime of aggravated kidnapping but is not an element of the crime of rape. *See* Kan.Stat.Ann. § 21–3421 (aggravated kidnapping); § 21–3502(1)(a) (rape). Because we believe the state's instruction unconstitutionally shifted to the defendant the burden of proving a lack of intent to kidnap, we grant Wiley's writ and vacate his conviction on the kidnapping offense.

In July 1978, Wiley and a friend, Raymond McClure, attended a party at a rock quarry outside El Dorado, Kansas, at which McClure apparently introduced Wiley to the victim. After Wiley and the victim became acquainted they spent some time alone in a nearby field, where they talked and kissed. When the victim realized that her ride had left, McClure offered to take her home.

McClure drove Wiley's vehicle, and the victim sat between McClure and Wiley. While they were in the vehicle Wiley became upset at the victim and struck her on the face several times, according to McClure and the victim. Wiley conceded becoming angry but denied assaulting the victim. The victim testified that they arrived at Wiley's trailer home and she entered the home to avoid being struck again. She testified that once inside she was repeatedly raped by Wiley. Wiley, on the other hand, claimed that the victim and McClure entered the trailer and began kissing; thereupon Wiley left and drove to a friend's apartment where he spent the night.

At the conclusion of the trial the jury found Wiley guilty of rape and aggravated

kidnapping. He was sentenced to seven years to life on the rape conviction and to life imprisonment on the aggravated kidnapping conviction.

I

The challenged instruction reads: "There is the presumption that a person intends all of the natural and probable consequences of his voluntary acts. This presumption is overcome if you are persuaded by the evidence that the contrary is true." R. II, 407–08. Wiley objected to this instruction at trial. The Kansas Supreme Court on direct appeal found no *Sandstrom* violation.[1] *State v. Wiley*, 615 P.2d 773 (Kan. 1980) (per curiam) (unpublished).

In Wiley's habeas action the federal district court also upheld the instruction's validity, reasoning that it did not "impose a conclusive mandate upon the jury to presume the requisite intent from the act committed since the jurors were clearly informed that the presumption 'is overcome if you are persuaded by the evidence that the contrary is true.'" R. I, 71.

In *Francis v. Franklin*, —— U.S. ——, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), the Supreme Court invalidated the following criminal instruction: "The acts of a person of sound mind and discretion are presumed to be the product of a person's will, but the presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts, but the presumption may be rebutted." *Id.* —— U.S. at ——, 105 S.Ct. at 1968 (quotations omitted). Critical to the Court's holding was its conclusion that merely informing the jurors the defendant may rebut the presumption that he intended the natural and probable

consequences of his acts did not prevent the jury from reasonably understanding the instruction to contain the type of presumption found unconstitutional in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979): "A mandatory rebuttable presumption is perhaps less onerous from the defendant's perspective, but it is no less unconstitutional." *Franklin*, —— U.S. at ——, 105 S.Ct. at 1973.

We cannot distinguish the instructions submitted in *Franklin* and there found to be unconstitutional from the challenged instruction in the instant case. Under both the jury is effectively told to presume a criminal intention by the defendant once the state has established that he acted voluntarily; both instructions also inform the jury that the defendant may rebut the presumption by contrary evidence.

We are mindful that we cannot read the challenged instruction in isolation, but must consider the instructions as a whole in determining whether a reasonable juror would have understood the court to have shifted the burden of persuasion. *See Franklin*, —— U.S. at ——, 105 S.Ct. at 1973. In the instant case, Instruction No. 3 stated that the jury must assume the defendant's innocence, and Instruction No. 6 stated that one of the elements the state must prove is that the defendant possessed the requisite intent to kidnap. Notwithstanding these additional instructions, we believe a reasonable juror still could have read the instructions as a whole as shifting the burden of persuasion.[2] The Supreme Court reached the same conclusion in *Franklin*, holding that similar instructions concerning the prosecutor's burden and the defendant's presumed innocence failed to

---

1. Because the United States Supreme Court decided the *Sandstrom* case before the Kansas Supreme Court decided Wiley's direct appeal, we need not determine whether the rule of *Sandstrom* applies retroactively. *See Jones v. Hess*, 681 F.2d 688, 695 n. 9 (10th Cir.1982).

2. In reaching this conclusion we overrule *Hux v. Murphy*, 733 F.2d 737 (10th Cir.1984), *cert.*

*denied*, —— U.S. ——, 105 S.Ct. 2331, 85 L.Ed.2d 848 (1985). We consider that result to be required by the Supreme Court's decision in *Franklin*. In accord with our practice in similar cases, this panel decision has been circulated among all active judges on the court, and they have agreed unanimously to the conclusion stated in this footnote.

cure the constitutional deficiency of the challenged instruction.[3]

## II

■ The Supreme Court in *Sandstrom* expressly left open the question whether an error like that made here could ever be harmless. 442 U.S. at 526–27, 99 S.Ct. at 2460–2461. When it later addressed the question the Court was evenly split on how to resolve it. *See Connecticut v. Johnson*, 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983) (plurality opinion); *see also Engle v. Koehler*, 707 F.2d 241 (6th Cir.1983), *aff'd by an equally divided court*, — U.S. —, 104 S.Ct. 1673, 80 L.Ed.2d 1 (1984) (per curiam). We need not confront the issue of whether this type error can ever be harmless, because we cannot conclude that the state has established beyond a reasonable doubt that the mandatory rebuttable presumption used at Wiley's trial did not contribute to the verdict obtained. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

At trial, the court instructed the jury on the elements of aggravated kidnapping:

"One. That the defendant took or confined [the victim] by force, threat or deception;

Two. That it was done with the intent to hold such person to facilitate the crime, to wit: rape;

Three. That bodily harm was inflicted upon [the victim]; and

Four. That this act occurred on or about the 30th day of July, 1978, in Butler County, Kansas."

R. II, 408.

Wiley's intent to forcefully transport the victim to his home with the intent to hold her in order to commit a rape was implicitly challenged at his trial. Wiley took the stand and recounted the events on that important evening. He testified that when the victim asked McClure for a ride home McClure informed her that it would first be necessary to stop at Wiley's trailer; that McClure was driving Wiley's vehicle and upon arriving at the trailer Wiley, McClure and the victim went inside; that shortly after arriving at the trailer Wiley left and spent the night at a friend's apartment; and that when he returned to his home the victim was gone. Although Wiley denied any involvement in the victim's rape, he did not dispute that he was a passenger in the vehicle with the victim and McClure on the drive to his home.[4] *Cf. Davis v. Kemp*, 752 F.2d 1515, 1521 (11th Cir.1985) (en banc) (per curiam) (finding harmless error when the defense asserted was non-participation rather than lack of intent), *cert. denied*, — U.S. —, 105 S.Ct. 2689, 86 L.Ed.2d 706, 707 (1985).

McClure testified that he had no recollection of the victim saying anything when

---

**3.** In *Franklin*, this portion of the instruction read:

"... I charge you that before the State is entitled to a verdict of conviction of this defendant at your hands ... the burden is upon the State of proving the defendant's guilt as charged ... beyond a reasonable doubt....

Now ... the defendant enters upon his trial with the presumption of innocence in his favor and this presumption ... remains with him throughout the trial, unless it is overcome by evidence sufficiently strong to satisfy you of his guilt ... beyond a reasonable doubt."

—— U.S. at ——, 105 S.Ct. at 1973 n. 6 (quotations omitted).

**4.** Wiley's denial of the rape represented an implicit challenge to his alleged intention to kidnap the victim because the kidnap charge required a finding that Wiley confined the victim with the intention to hold her in order to facili-

tate her rape. Defense counsel in his closing argument emphasized the disputed nature of Wiley's intent to kidnap:

"You will notice the requirements in the instruction if you find it, the instruction on aggravated kidnapping, that this is an element that the defendant took or confined [the victim] by force, threat or deception, and that it was done with the intent to hold such person to facilitate the commission of rape. Now if they have proven that, even assuming that, of course, we do not admit that or anything that she was taken to the trailer or that there was any evidence that it was done to commit rape because there wasn't, and that has to be proved. The intent has to be proved, the taking or confining has to be done with the intent. In other words, it has to be proved that when it was done it was for the purpose of rape."

R. II, 440–41.

she learned that they were going to Wiley's house. McClure also stated that upon arriving at the trailer the victim asked him to take her home but he refused; and that while the victim waited in the car Wiley and McClure talked outside, at which time Wiley expressed a desire to have sex with the victim.

Thus, the evidence was far from overwhelming that the victim unwillingly accompanied petitioner Wiley to his trailer and that Wiley intended to rape her once they arrived. *Cf. Jarrell v. Balkcom*, 735 F.2d 1242, 1257 (11th Cir.1984) (evidence of guilt so overwhelming that *Sandstrom* error could not have been a contributing factor of conviction).

Further, during closing argument the prosecutor seized on the intent instruction to place on the defendant the burden of proving the absence of such intent:

"The second element of aggravated kidnapping is that it was done with the intent to hold such person to facilitate the commission of any crime, to wit: rape. Now, this I want to tie into another instruction, Instruction No. 4. No. 4 tells us there is a presumption that a person intends all the natural and probable consequences of his voluntary acts. This presumption is overcome if you are persuaded by the evidence that the contrary is true. That is the instruction. It gives you the power to use your common sense. *If she wanted to go home and these guys knew it and they instead took her to a trailer, then she was raped, under that instruction the natural and probable consequence of taking her to a different place than where they said they would take her shows you that at the very moment she got in the car, at the very moment they drove outside of that quarry, they were going to take her and rape her.*"

R. II, 418–19 (emphasis added).

Finally, the fact that the jury during its deliberations requested the court to reread Wiley and the victim's testimony about the period from when she requested a ride home to when they arrived at Wiley's trailer supports the conclusion that the evidence of Wiley's guilt was not overwhelming. *Cf. Franklin*, —— U.S. at ——, 105 S.Ct. at 1977 (jury requested reinstruction on the elements of malice and accident). Because a mandatory rebuttable presumption no doubt eases the jury's task, " 'there is no reason to believe the jury would have deliberately undertaken the more difficult task' of evaluating the evidence of intent." *Connecticut v. Johnson*, 460 U.S. at 85, 103 S.Ct. at 976 (opinion of Blackmun, J.) (quoting *Sandstrom* ).

Here the trial court's instructions effectively removed from the state the task of proving, and from the jury the duty of determining, that the defendant had the requisite intent to kidnap.

REVERSED.

BARRETT, Circuit Judge, concurring:

I concur with Judge Logan's opinion in this case because I believe it is consistent with the majority opinion in *Francis v. Franklin*, —— U.S. ——, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). However, my views correspond with the *Franklin* dissenters (Justice Rehnquist, joined by the Chief Justice and Justice O'Connor). I agree with the dissenters' views, which in conclusion were stated thusly:

It appears that under the Court's approach it will reverse a [state] conviction if a "reasonable juror" hypothetically *might* have understood the charge unconstitutionally to shift a burden of proof, even if it was unlikely that a single juror had such an understanding. I believe that it must at least be *likely* that a juror so understood the charge before constitutional error can be found. Where as here a *Sandstrom* error is alleged involving not a conclusive presumption, but a rebuttable presumption, language in the charge indicating the State's general burden of proof [beyond a reasonable doubt] and jury's duty to examine all surrounding facts and circumstances generally should be sufficient to dissipate any constitutional infirmity. Otherwise we risk finding consti-

684

tutional error in a record such as this one, after finely parsing through the elements of state crimes that are really far removed from the problems presented by the burden of proof in *Winship*. [*In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1979)]. I do not believe that the Court must inject itself this far into the state criminal process to protect the fundamental rights of criminal defendants.

— U.S. at ——, 105 S.Ct. at 1985.