No. 57,515

STATE OF KANSAS, *Appellee*, v. WILLIAM H. MASON, *Appellant*.

(708 P.2d 963)

Opinion filed October 25, 1985.

*Lisa A. Nathanson*, of Legal Services for Prisoners, Inc., of Lansing, argued the cause, and *Benjamin C. Wood*, of the same office, was on the brief for appellant.

*Frank E. Kohl*, county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

MILLER, J.: William H. Mason was convicted by jury trial in Leavenworth District Court of murder in the second degree, K.S.A. 21-3402, and aggravated burglary, K.S.A. 21-3716. He was sentenced on June 6, 1975, to serve a minimum term of fifteen years for the murder and a minimum term of five years for the

aggravated burglary, the sentences to run concurrently and to commence as of March 1, 1974. (K.S.A. 21-4501 [Weeks], then applicable, fixed the maximum term for murder in the second degree at life imprisonment, and the maximum term for aggravated burglary at twenty years.) Notice of appeal was filed on June 11, 1975. The appeal, however, was not docketed until 1984, when an order was entered by this court granting leave to docket the appeal out of time. This is a direct appeal from the judgment of conviction and sentence.

Defendant contends that the trial court erred in refusing to admit the results of a polygraph test, in refusing to instruct the jury on voluntary and involuntary manslaughter, in its instruction to the jury relating to the defendant's confession, in improperly instructing the jury on the issue of intent, and in failing to instruct the jury that a killing, to constitute second-degree murder, must be intentional.

Since defendant does not challenge the sufficiency of the evidence to establish the offenses, we need not discuss the evidence extensively. The seventy-six-year-old victim, Mrs. Barbara Chmidling, lived alone in her home in Leavenworth. She rented a nearby house to the defendant, William H. Mason, where he, his wife, and their eighteen-month-old daughter lived. On January 24, 1974, Kenneth Chmidling, son of the victim, became concerned when his mother did not answer her telephone or contact other members of the family. He went to his mother's home, entered with his key, and found her body in the bedroom. Initially, no foul play was suspected. Mr. Chmidling called the undertaker, and he took the body to the funeral home. There, in preparing the body, the undertaker discovered that Mrs. Chmidling had been strangled by a green Army sock knotted around her neck. An intensive police investigation followed. Mrs. Chmidling's billfold, a shotgun, and a coin collection were found to be missing from her home.

On February 28, 1974, defendant was questioned by an agent of the K.B.I. at the Leavenworth police department headquarters. Defendant was first advised of his *Miranda* rights. He acknowledged in writing that he understood them, and he agreed to talk with the officer. The questioning began about 8:45 p.m. and concluded about 2:00 a.m. on the following morning, with a number of breaks being taken during the interrogation.

Defendant confessed to the murder of Mrs. Chmidling by strangulation with a sock, and admitted that he took her wallet with him when he left the residence. There was no mention made in the statement about the shotgun or the coin collection. Defendant stated that he had thrown the billfold over a nearby bridge; none of the items were ever recovered. The evidence disclosed that the victim was raped, but the defendant denied that he had any sexual contact with her.

The defense was that the defendant was innocent, and that he only gave the officers a confession because he was a confused and brain-damaged individual who did not handle stressful situations well and might agree to things that were not true in order to relieve stress and anxiety. Most of the facts of the crime had already been reported in detail in the local newspaper before defendant confessed, and it was argued that defendant got the details set forth in his confession from reading newspaper accounts of the atrocity. Defendant was only eighteen years of age at the time the offense was committed. There was evidence that he was a native of Indiana, serving in the United States Army at Fort Leavenworth at the time of the occurrence. He had not done well in school but had been active in Boy Scouts, and he had no prior criminal record. His wife found him to be normal and mentally alert in all respects.

We turn first to the polygraph test result issue. Prior to his arrest, defendant was given a polygraph examination at the instigation of police officers. The test results indicated that the defendant had no guilty knowledge of the case. Defendant sought to introduce the result of the test into evidence, but the trial court refused to admit it. Defendant contends this was error.

In *State v. Wise*, 237 Kan. 117, 123-24, 697 P.2d 1295 (1985), we recently stated our rule with reference to polygraph evidence. We said:

"The Kansas rule has been frequently stated and is clear: In the absence of a stipulation between the parties, the results of a polygraph examination are not admissible in evidence. *State v. Crossman*, 229 Kan. 384, 389, 624 P.2d 461 (1981); *State v. Nemechek*, 223 Kan. 766, Syl. ¶ 3, 576 P.2d 682 (1978); and *State v. Blosser*, 221 Kan. 59, Syl. ¶ 1, 558 P.2d 105 (1976). Here there was no stipulation. To permit the defendant to introduce the results of the test, or even to refer to the giving of the test, would have been improper."

Similarly, there was no stipulation in the present case. The trial court did not err in refusing to admit the test results in evidence.

Next, we turn to the defendant's contention that the trial court erred by refusing to instruct the jury on the lesser included offenses of voluntary and involuntary manslaughter. The defendant did not testify in this case and we do not have the testimony of eyewitnesses to the occurrence. The evidence is that the victim was strangled; that strangulation caused her death; and that certain items were thereafter found missing from her home. There was no evidence of a sudden quarrel or heat of passion, and no evidence of an unintentional killing in the wanton commission of an unlawful act not amounting to a felony, or in the commission of a lawful act in an unlawful or wanton manner. In short, there was no evidence to support the giving of manslaughter instructions, and no evidence upon which the defendant might reasonably have been convicted of those offenses.

Defendant contends that there was evidence that he had been drinking on the night of the homicide and that drunkenness may reduce homicide from murder to manslaughter. The defendant did state in his confession that he had had some drinks on the night in question. However, he did not claim that he was drunk or intoxicated. The only other evidence relating to his condition on that night was to the effect that he was normal, acted the same as he always did, talked with his wife and made sense, and that he was not drunk. We have held that voluntary intoxication may be used to demonstrate an inability to form a particular state of mind necessary for a specific intent crime. *State v. McDaniel & Owens*, 228 Kan. 172, Syl. ¶ 2, 612 P.2d 1231 (1980). However, to reduce a homicide from murder to manslaughter, drunkenness must be so extreme as to prevent the formation of an intent to kill. See *State v. Crispin*, 234 Kan. 104, 110, 671 P.2d 502 (1983), quoting from *State v. Seelke*, 221 Kan. 672, 678, 561 P.2d 869 (1977). There was no showing here that defendant was in that condition, and his memory of the events of the evening was remarkably clear. Under the circumstances, the trial court was correct in refusing the request to instruct the jury on manslaughter.

We now turn to the defendant's contention that the trial court erred in instructing the jury concerning the defendant's confession. The trial court gave the jury a lengthy instruction requiring it to determine that the confession was voluntarily made before

the jury might consider it in its deliberations. The defendant argues that the giving of this instruction was error for two reasons: First, it is the province of the judge and not the jury to determine the voluntariness of a confession; second, the instruction did not require the jury to weigh and determine the truthfulness and reliability of the confession. In support of the first of these contentions, the defendant relies upon *Lego v. Twomey*, 404 U.S. 477, 30 L.Ed.2d 618, 92 S.Ct. 619 (1972). That case, however, does not support defendant's claim that it is error to submit the issue of voluntariness to the jury. Lego contended that even though the trial judge had ruled upon his claim of coercion in a *Jackson v. Denno* hearing, he was entitled to have the matter submitted to the jury and to have the jury decide the claim anew. The Supreme Court decided that Lego was not entitled to "a second forum for litigating his claim," 404 U.S. at 490. Simply stated, the rule is that once a trial court has ruled upon the voluntariness of a confession at a *Jackson v. Denno* hearing, the accused is not entitled under the Constitution to have the matter resubmitted to and redetermined by a jury.

Our court has also held that it is not necessary for a trial court to submit the issue of voluntariness of a confession to a jury, or to instruct on that matter. See *State v. Stephenson*, 217 Kan. 169, 173, 535 P.2d 940 (1975). See also *State v. Shaffer*, 229 Kan. 310, 624 P.2d 440 (1981); *State v. Harwick*, 220 Kan. 572, 552 P.2d 987 (1976); *State v. Milow*, 199 Kan. 576, 433 P.2d 538 (1967); K.S.A. 22-3215(5).

The instruction given by the trial court in this case followed PIK Crim. 52.17 as it read at the time of trial. In response to *Stephenson*, that instruction was later removed and the PIK committee now recommends that a separate instruction on confession need not be given. The instruction as given in effect gave the defendant a second bite at the apple. Not only did the judge determine that the confession was voluntary, but the jury was given an opportunity to make its own determination on that issue and to reject the confession if the jury determined that it was not voluntary. Under the trial court's instructions in submitting this issue to the jury, the only possible prejudice was to the State, not to the defendant.

The second part of defendant's attack on the confession instruction is that the jury was not told to weigh or determine the

truthfulness or the reliability of the confession. To the contrary, we have held in several cases that a special instruction bearing on the credence to be given a confession is not required when the jury is given a general instruction bearing on the credibility of the testimony of every witness. See *State v. Shaffer*, 229 Kan. at 316, and *State v. Harwick*, 220 Kan. at 578. Here, the trial judge gave the jury the usual instruction: "It is for you to determine the weight and credit to be given the testimony of each witness." We conclude that the instruction complained of was not error. Additionally, we note that no objection was made at trial to the instruction given, and there was no request for an instruction directing the jury to weigh the truthfulness and reliability of the confession. K.S.A. 22-3414(3) provides in applicable part that:

"No party may assign as error the giving or failure to give an instruction unless he objects thereto before the jury retires to consider its verdict stating distinctly the matter to which he objects and the grounds of his objection unless the instruction is clearly erroneous."

The instruction given was not "clearly erroneous."

A more difficult issue is presented by defendant's claim that the trial court erred in its jury instruction on intent. Again, there was no contemporaneous objection to the instruction as given. We therefore examine it to determine whether it was "clearly erroneous." The instruction reads:

"7. There is a presumption that a person intends all the natural and probable consequences of his voluntary acts. This presumption is overcome if you are persuaded by the evidence that the contrary is true."

This instruction is verbatim to PIK Crim. 54.01 as promulgated by the Pattern Jury Instructions Committee of the Kansas District Judges Association in the original volume of PIK Criminal, 1971. The trial court also instructed the jury as follows:

"2. The law places the burden upon the State to prove the defendant is guilty. The law does not require the defendant to prove his innocence. Accordingly, you must assume that the defendant is innocent unless you are convinced from all of the evidence in the case that he is guilty.

"You should evaluate the evidence admitted in this case and determine the innocence or guilt of the defendant entirely in accordance with these instructions. The test you must use is this: If you have a reasonable doubt as to the truth of any of the claims made by the State, you should find the defendant not guilty. If you have no reasonable doubt as to the truth of any of them, you should find the defendant guilty."

Four years after the trial in this case, the United States Su-

preme Court decided the case of *Sandstrom v. Montana*, 442 U.S. 510, 61 L.Ed.2d 39, 99 S.Ct. 2450 (1979). In that case, the trial court had given the jury a one-sentence instruction which parallels the first sentence of instruction No. 7 above:

" 'The law presumes that a person intends the ordinary consequences of his voluntary acts.'" 442 U.S. at 513.

Trial counsel in *Sandstrom* objected to the instruction on the ground that it impermissibly shifted the burden of proof on the issue of purpose or knowledge (intent) to the defendant. The Supreme Court reversed and remanded, holding that the instruction might have been interpreted by a reasonable jury as a conclusive presumption, or as one requiring the defendant to come forward with evidence to prove his mental state. Following *Sandstrom*, we were called upon several times to review cases in which an instruction along the lines of No. 7 above was given, and we held that the two-sentence instruction creates a permissive presumption and does not shift the burden of proof to the defendant. *State v. McDaniel & Owens*, 228 Kan. at 179-80; *State v. Costa*, 228 Kan. 308, 320, 613 P.2d 1359 (1980); *State v. Egbert*, 227 Kan. 266, 267, 606 P.2d 1022, *cert. denied* 449 U.S. 965 (1980); *State v. Acheson*, 3 Kan. App. 2d 705, 712-15, 601 P.2d 375, *rev. denied* 227 Kan. 927 (1979).

Also, following the Supreme Court's opinion in *Sandstrom*, the PIK Committee revised PIK Crim. 54.01 and since 1979 it appears as follows:

"Ordinarily a person intends all of the usual consequences of his voluntary acts. This inference may be considered by you along with all the other evidence in the case. You may accept or reject it in determining whether the State has met its burden to prove the required criminal intent of the defendant. This burden never shifts to the defendant."

The revised instruction, of course, was not given in the case at hand. The Committee's initial notes and comments to the revised instruction, however, are instructive. They read:

"Notes on Use

"The committee has revised the above instruction on the basis of *State v. Acheson*, decided by the Kansas Court of Appeals on October 15, 1979, 3 Kan. App. 2d 705, 601 P.2d 375 (1979) [following *Sandstrom*].

"This instruction must not be confused with PIK 54.01—A, General Criminal Intent. The above instruction is a rule of evidence and does not fulfill the required element of criminal intent necessary for conviction in those cases where

criminal intent is a necessary element of the offense. *State v. Clingerman*, 213 Kan. 525, 516 P.2d 1022 (1973).

"**Comment**

"The committee is of the opinion that the prior PIK 54.01 is not constitutionally defective, when considered with the other usual instructions given including the burden of proof and presumption of innocence. However, consistent with the *Acheson* case, this instruction is modified to 'make it crystal clear that it is only a permissive inference, leaving the trier of fact free to consider or reject it. . . .'

"It is only where the jury might interpret the instruction as creating a conclusive presumption on the issue of intent and shift the burden of persuasion to the defendant, does *Sandstrom v. Montana*, 442 U.S. 510, 61 L.Ed.2d 39, 99 S.Ct. 2450 (1979), apply. In *Sandstrom* the Court held that the giving of the first *sentence only* of prior PIK 54.01 could infer to a jury that it was incumbent upon the defendant to prove the contrary by some quantum of proof.

"*Sandstrom* is consistent with earlier Kansas cases holding that PIK 54.01 does not shift the burden to the defendant on the issue of intent. See *State v. Warbritton*, 211 Kan. 506, 506 P.2d 1152 (1973); *State v. Lassley*, 218 Kan. 758, 545 P.2d 383 (1976), wherein the Court held PIK 54:01 valid where the jury is informed that the burden to prove criminal intent is on the prosecution beyond a reasonable doubt and that the presumption does not dispose with this burden nor nullify the presumption of innocence; and *State v. Woods*, 222 Kan. 179, 563 P.2d 1061 (1977), reaffirming *Lassley*." PIK Crim. 54.01 (1979 Supp.).

After the briefs were filed in this case, the United States Supreme Court announced its opinion in *Francis v. Franklin*, 471 U.S. _____, 85 L.Ed.2d 344, 105 S.Ct. 1965 (1985), and diligent counsel for the appellant have called that case to our attention as well as a more recent case of the United States Court of Appeals for the Tenth Circuit, which we will discuss later in this opinion. In *Francis*, the court stated the issue before it as follows:

"This case requires that we decide whether certain jury instructions in a criminal prosecution in which intent is an element of the crime charged and the only contested issue at trial satisfy the principles of *Sandstrom v Montana*, 442 U.S. 510, 61 L.Ed.2d 39, 99 S. Ct. 2450 (1979). Specifically, we must evaluate jury instructions stating that: (1) '[t]he acts of a person of sound mind and discretion are presumed to be the product of a person's will, but the presumption may be rebutted' and (2) '[a] person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts, but the presumption may be rebutted.' App. 8a-9a. The question is whether these instructions, when read in the context of the jury charge as a whole, violate the Fourteenth Amendment's requirement that the State prove every element of a criminal offense beyond a reasonable doubt." 471 U.S. at _____. (85 L.Ed.2d at 350.)

It is interesting to note that intent was not only an element of the crime charged but "the only contested issue at trial." The court noted that the instruction concerning the presumption was

cast in mandatory language, followed by a statement that the presumption "may be rebutted." The court concluded:

"When combined with the immediately preceding mandatory language, the instruction that the presumptions 'may be rebutted' could reasonably be read as telling the jury that it was required to infer intent to kill as the natural and probable consequence of the act of firing the gun unless the defendant persuaded the jury that such an inference was unwarranted. The very statement that the presumption 'may be rebutted' could have indicated to a reasonable juror that the defendant bore an affirmative burden of persuasion once the State proved the underlying act giving rise to the presumption. Standing alone, the challenged language undeniably created an unconstitutional burden-shifting presumption with respect to the element of intent." 471 U.S. at _____. (85 L.Ed.2d at 356.)

The court then went on to hold that the trial court's general instructions did not cure the defect and that, under the facts of the case, intent being the primary issue at trial, the giving of the instruction was not harmless error.

Following the publication of the Supreme Court's opinion in *Francis*, the United States Court of Appeals for the Tenth Circuit announced its decision in *Wiley v. Rayl*, 767 F.2d 679 (10th Cir. 1985). Wiley was convicted in the District Court of Butler County of rape and aggravated kidnapping. Upon exhaustion of his state remedies, he sought habeas corpus in the federal courts under 28 U.S.C. § 2254 (1982), contending among other things that his due process rights were violated by the trial court when it instructed the jury:

" 'There is the presumption that a person intends all of the natural and probable consequences of his voluntary acts. This presumption is overcome if you are persuaded by the evidence that the contrary is true.' " 767 F.2d at 681.

Wiley objected to the instruction at trial. The Kansas Supreme Court heard the case after the *Sandstrom* opinion was published and found no *Sandstrom* violation. *State v. Wiley*, No. 50,726, unpublished opinion filed July 18, 1980, *cert. denied* 449 U.S. 1087, *reh. denied* 451 U.S. 977 (1981). The Tenth Circuit, noting that intent was an issue and the challenged instruction was specifically argued to the jury in the prosecution's closing argument, vacated Wiley's kidnapping conviction. It found that the trial court's instruction violated the rule of *Francis v. Franklin*, and "effectively removed from the state the task of proving, and from the jury the duty of determining, that the defendant had the requisite intent to kidnap." 767 F.2d at 683.

In *Francis*, the accused's intent at the time the crime was committed *was the only contested issue at trial.* His sole defense

was a lack of the requisite intent to kill. He offered evidence of lack of intent to kill. The facts did not overwhelmingly preclude that defense—Franklin had fired through a closed door, killing the victim who was inside.

Here, in contrast, intent, while an element of the offense, was not *the* issue. Neither counsel mentioned intent to kill in closing argument. Neither referred to instruction No. 7 in argument. Unlike *Francis*, the jury in this case did not request a clarifying instruction on intent. The facts—victim strangled by a sock tightly knotted around her throat by an assailant—leave little room for argument on the intent issue.

As in *Francis*, intent was an issue in *Wiley*, and the PIK instruction was specifically relied upon by the prosecution and emphatically called to the jury's attention during closing argument. Under the facts, as the Tenth Circuit points out:

"[T]he evidence was far from overwhelming that the victim unwillingly accompanied . . . Wiley to his trailer and that Wiley intended to rape her once they arrived." 767 F.2d at 683.

Further, Wiley objected to the instruction at trial.

In the case at hand, intent was not a hotly contested issue; intent—or lack of it—was not argued to the jury; the challenged instruction was not argued to the jury; and the evidence of intent was strong, as we noted above. Finally, Mason lodged no objection to the instruction at trial and none at the argument on his motion for a new trial.

The instruction itself, while somewhat similar to that twice repeated in *Francis*, does not contain the "may be rebutted" language and instead tells the jury that the presumption "is overcome if you are persuaded by the evidence that the contrary is true." This does not suggest to the jury that the defendant must come forth with evidence in rebuttal, but directs the jury to carefully weigh the evidence before applying the presumption. This means *all* of the evidence—the State's evidence and the defendant's evidence, if any. The jury must weigh the evidence and make that determination. "Rebut" implies a duty to come forward with contrary evidence, a shifting of the burden. Instruction No. 7 contains no such implication.

It is reasonable to conclude that a rational person, under ordinary circumstances, does intend the natural and probable consequences of his or her voluntary acts. A person who en-

dorses a check and deposits it in the bank intends to secure credit for the amount of the check, and intends that the check will go through commercial channels to the bank of the drawer, where it will be debited against that person's account. One who turns the knob and pushes obviously intends to open the door. One who aims a firearm at another, at point blank range, and pulls the trigger, intends to fire the weapon, to cause it to eject a projectile, and to have that projectile strike the other person. Likewise, one who wraps a sturdy cloth around the neck of another and pulls the cloth tight enough to interfere with that person's breathing obviously intends that action to compress the neck of the victim and to cut off his or her supply of air. The evidence in a particular case, however, may indicate that the person did not know all of the facts or for some reason did not intend certain usual and ordinary consequences to follow. Thus, one must consider all of the attendant circumstances—weigh all of the evidence—in determining whether or not the ordinary presumption applies.

Upon a careful examination of the jury instructions here given, the issues upon which this case was tried, the facts developed by the evidence, the arguments of counsel, and the case law cited above, we hold that instruction No. 7 does not state a mandatory presumption and does not impermissibly shift the burden to the defendant. The instruction, as given, was not "clearly erroneous" and, since no objection was lodged during trial, does not constitute reversible error under K.S.A. 22-3414(3).

In *State v. Knapp*, 234 Kan. 170, 671 P.2d 520 (1983), Justice Holmes concisely stated in Syllabus ¶ 7:

"In determining that a federal constitutional error constitutes harmless error, a court must be able to declare the error had little, if any, likelihood of having changed the result of the trial and the court must be able to declare such a belief beyond a reasonable doubt."

And see *Chapman v. California*, 386 U.S. 18, 17 L.Ed.2d 705, 87 S.Ct. 824, *reh. denied* 386 U.S. 987 (1967), where the court said:

"[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. at 24.

Here we are of the belief beyond a reasonable doubt that a change in or a complete deletion of instruction No. 7 would not

have changed the result of this trial. We therefore hold that in this case the instruction, if erroneous, was harmless error.

Finally, defendant contends that the trial court committed reversible error because it failed to instruct the jury that a killing, to constitute murder in the second degree, must be intentional. There was no objection to the instruction given, therefore our review is limited to a determination of whether the instruction given by the court is clearly erroneous. *State v. Maxwell*, 234 Kan. 393, Syl. ¶ 5, 672 P.2d 590 (1983); K.S.A. 22-3414(3).

This is the second-degree murder instruction given by the trial court:

"4. The offense of murder in the first degree with which the defendant is charged in Count One of the information includes the lesser offense of murder in the second degree. If you do not find the defendant guilty of murder in the first degree, you shall consider if he is guilty of murder in the second degree.

"To establish the charge of murder in the second degree, each of the following claims must be proved:

"1. That the defendant killed Barbara Chmidling;

"2. That such killing was done maliciously; and

"3. That this act was done on or about the 24th day of January, 1974, in Leavenworth County, Kansas."

The instruction is the one proposed in PIK Crim. 56.03 as it existed at the time of trial. The court then defined "maliciously" in the following manner:

"As used in these instructions the word 'maliciously' means willfully doing a wrongful act without just cause or excuse."

That instruction parallels PIK Crim. 56.04(a) as it then existed. The jury was thus instructed that the killing must be done maliciously, and that maliciously means willfully. Willfully, in common conversation, means deliberately and intentionally, governed by one's will, and not by accident or chance. A trial court is not required to define words in common usage, words which are widely used and are readily comprehensible to the average person. *State v. Griffin*, 221 Kan. 83, 84, 558 P.2d 90 (1976). While the PIK committee has, since this trial, revised PIK Crim. 56.03 to include the word "intentionally," the instruction on second-degree murder given in this case was not clearly erroneous and does not constitute reversible error.

The judgment is affirmed.