(283 P.3d 224)
No. 105,930

STATE OF KANSAS, *Appellee*, v. BALDHIR SOOD, *Appellant*.

—

Opinion filed July 27, 2012.

*Rebecca L. Kurz*, of Morgan Pilate LLC, of Olathe, for appellant.

*Andrew D. Bauch*, assistant attorney general, *Kristafer Ailslieger*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., MALONE and McANANY, JJ.

GREEN, J.: Baldhir Sood appeals from his convictions by a jury of one count of computer fraud, in violation of K.S.A. 21-3755, and one count of attempted theft, in violation of K.S.A. 21-3301 and K.S.A. 21-3701. On appeal, Baldhir argues that the trial court erred in denying his request for a jury instruction on ignorance or mistake of fact. We agree and reverse. Baldhir also argues that the State failed to present sufficient evidence to convict him of computer fraud. We disagree and affirm. Finally, Baldhir argues that the State failed to present sufficient evidence to convict him of attempted theft. We disagree and affirm.

Because the attempted theft charge is so closely interwoven with the computer fraud charge, and because we are reversing the computer fraud conviction based on the trial court's failure to give the ignorance or mistake of fact instruction and a specific intent instruction concerning the computer fraud charge, we reverse the

attempted theft conviction as well and remand both the computer fraud and attempted theft charges for a new trial.

In 2009, the Security Division of the Kansas Lottery (Lottery), as part of its Retailer Honesty Assurance Program, conducted a sting operation to test the integrity of the state lottery. The purpose of the sting operation was to "ensure that every player ha[d] a fair chance of being paid if they [had] a winning ticket." As part of the sting operation, the Lottery made counterfeit scratch off tickets for its Scrabble game. When scanned, the counterfeit ticket (sting ticket) would appear to have a prize value of $25,000. To implement the sting operation, the Lottery sent an undercover Lottery enforcement agent to various stores around the state. The agent, dressed in street clothes, would enter the store with a sting ticket and an authentic nonwinning ticket. Then, the agent would present both tickets to the clerk to see if either ticket was a winning ticket. If possible, the agent would try to appear distracted to give the clerk the opportunity to check the tickets without the agent seeing the results.

Once a store clerk received the tickets from the agent, he or she would have to enter a three-digit code printed on the ticket and would have to scan the ticket's bar code at the lottery terminal to determine if the ticket was a winner. Generally, when a clerk scanned a winning ticket, the terminal would display one of two messages. If the value of the winning ticket was less than $600, the terminal would display "winner" and would show the prize amount, which could be paid by the store clerk immediately. If the prize value of the ticket was $600 or more, then the terminal display would display "Claim at Lottery." Moreover, the terminal would play either *You're in the Money* or *Beethoven's Fifth Symphony* if the ticket was a winning ticket. When a losing ticket was scanned, however, the lottery terminal would not produce sound but merely displayed, "Sorry not a winner." Under the sting operation, the agent's actions were dependent on the actions of the store clerk. If the agent was told by the clerk that the sting ticket was a winner, he took the ticket back and left the store. But if the agent was told that the sting ticket was not a winner, he or she would do the following:

"I would—if it was said in a manner that it was clear, I would say, Thank you, and walk out of the store. If it was said in a manner that was a little bit ambiguous, I would ask, Are you sure it's not a winner, or Is it not a winner, or Neither ticket's a winner? And then I would leave once being told that the ticket was not a winning ticket."

On July 29, 2009, Agent Paul Schliffke went to a Shell gas station in Johnson County, Kansas, to conduct the sting operation. The station that Schliffke went to was owned by Baldhir and his wife Jiwan Jyoti Sood. Baldhir was working as the clerk when Schliffke entered the store. After Schliffke entered the store, he purchased a bottle of water and presented Baldhir with the sting ticket and an authentic losing ticket in accordance with the sting operation. Baldhir scanned the tickets and told Schliffke that he did not have a winning ticket. Schliffke then asked Baldhir, "Neither one?" and Baldhir responded that neither ticket was a winner. Neither *You're in the Money* or *Beethoven's Fifth Symphony* played when Baldhir scanned the tickets. Schliffke left the tickets with Baldhir and left the store.

The next day Jiwan called the Lottery headquarters and asked about the value of the sting ticket. Jiwan's call was directed to Schliffke. After Schliffke confirmed that Jiwan possessed the sting ticket, he asked her if the ticket was hers. Jiwan stated that the ticket was hers. Schliffke asked Jiwan how much she thought the ticket was worth, and she stated $25,000.

On August 12, 2009, Jiwan went to the Lottery headquarters to fill out a claim form for the sting ticket along with an application to be a lottery retailer at another store owned by her and Baldhir. After Jiwan filled out the paperwork, Schliffke asked her questions about the sting ticket. At first, Jiwan told Schliffke that Baldhir had purchased the sting ticket 2 weeks ago and that she had scratched the ticket. After Schliffke confronted Jiwan, however, she changed her statement and said that Baldhir gave her the sting ticket, which he thought was a winning ticket. Specifically, Jiwan stated that Baldhir had scanned several tickets without getting a read-out message from the terminal. Thus, Baldhir asked a customer what this meant, and the customer told Baldhir that the sting ticket was a winning ticket and suggested that he call the Lottery office.

Later, the State charged Baldhir with one count of computer fraud, in violation of K.S.A. 21-3755, and one count of attempted theft, in violation of K.S.A. 21-3301 and K.S.A. 21-3701. Baldhir's case proceeded to a trial by jury. At trial, Baldhir testified that Schliffke came into the store, bought a drink, and asked him to check two lottery tickets. Baldhir then scanned the tickets at the terminal, but because no music played when he scanned the tickets, he believed that neither ticket was a winner. Baldhir further testified that after he scanned the tickets, he threw them in the trash without looking at the terminal display.

About 10 minutes later, one of the Soods' regular customers came into the store with some lottery tickets to check. Baldhir told the customer that he thought the terminal was not working properly, but he allowed the customer to check his tickets at the terminal anyway. The customer also checked the tickets from the trash. After the customer checked the sting ticket, he gave the ticket to Baldhir, who wrote a note on the ticket saying that it was a winning ticket. Baldhir then placed the sting ticket, along with the note, in the cash drawer.

Regina Moore, another one of the Soods' regular customers, testified on Baldhir's behalf and corroborated his version of the events. Moore testified that a man came into the store and asked if he could check his lottery tickets. Moore testified that Baldhir told the customer that the machine was not working but that he could go ahead and try to check his tickets. The customer put a ticket in the lottery machine and removed a ticket from the trash and put it in the machine as well. Next, Moore testified that Baldhir took from the customer a ticket that had been removed from the trash, that Baldhir wrote something on it, and that Baldhir placed it in the cash register.

After the close of evidence, the parties had a jury instruction conference with the trial court to determine the appropriate jury instructions. During the conference, Baldhir's counsel requested an instruction on ignorance or mistake of fact modeled after PIK Crim. 3d 54.03. The trial court denied Baldhir's counsel's jury instruction request. The jury found Baldhir guilty on both counts. The trial court sentenced Baldhir to an underlying controlling sen-

tence of 8 months in prison and granted him probation for a term of 18 months.

*Is Computer Fraud under K.S.A. 21-3755(b)(1)(B) a Specific Intent Crime?*

Before we can address the merits of Baldhir's arguments, we first must determine if a violation of K.S.A. 21-3755(b)(1)(B), the computer fraud statute, is a specific intent crime. The State maintains that Baldhir was not entitled to the ignorance or mistake of fact instruction because a violation of the computer fraud statute is not a specific intent crime. On the other hand, Baldhir argues that the computer fraud statute is a specific intent crime. The determination whether a criminal statute is a general intent or a specific intent crime is a legal question over which appellate courts have unlimited review. *State v. Richardson,* 289 Kan. 118, 121, 209 P.3d 696 (2009).

The parties have not cited a case and our research has not revealed a case that decides this specific issue.

The computer fraud statute under which Baldhir was convicted provides in relevant part:

"Computer crime is: . . . using a computer, computer system, computer network or any other property for the purpose of devising or executing a scheme or artifice *with the intent to defraud* or for the purpose of obtaining money, property, services or any other thing of value by means of false or fraudulent pretense or representation." (Emphasis added.) K.S.A. 21-3755(b)(1)(B).

"[Kansas] appellate courts have consistently interpreted statutes that define a crime by using the phrase 'with intent to' as requiring a specific intent element." *Richardson,* 289 Kan. at 122. Our appellate courts have enumerated examples of specific intent crimes. See, *e.g., In re C.P.W.,* 289 Kan. 448, 454-55, 213 P.3d 413 (2009); *State v. Diaz,* 44 Kan. App. 2d 870, 874, 241 P.3d 1018, *rev. denied* 291 Kan. 913 (2011). Nevertheless, inclusion of intent language in a statute does not automatically show that the legislature intended to create a specific intent crime. See, *e.g., State v. Makthepharak,* 276 Kan. 563, 572, 78 P.3d 412 (2003) (aggravated battery is not a specific intent crime); *State v. Campbell,* 30 Kan. App. 2d 70, 73, 39 P.3d 97, *rev. denied* 273 Kan. 1037 (2002).

Specific intent crimes refer to intent to commit a further act or achieve a future consequence. Our Supreme Court made precisely this point in *Richardson*: "The distinction between general intent and specific intent crimes is 'whether, in addition to the intent required by K.S.A. 21-3201, the statute defining the crime in question identifies or requires a further particular intent which must accompany the prohibited acts.' [Citation omitted.]" *Richardson*, 289 Kan. at 121. K.S.A. 21-3755(b)(1)(B) proscribes the fraudulent use of a computer *"with the intent to defraud."* (Emphasis added.) An " '[i]ntent to defraud requires a willful act by the defendant with the specific intent to deceive or cheat, usually for the purpose of getting financial gain for one's self or causing financial loss to another.' [Citation omitted.]" *United States v. Howard*, 619 F.3d 723, 727 (7th Cir. 2010).

Similarly, K.S.A. 21-3755(b)(1)(B) contains reference to an intent to do a further act or achieve a future consequence. For example, in addition to using a computer to devise or execute a scheme or artifice either to defraud or for the purpose of obtaining money, property, services or any other thing of value by means of false or fraudulent pretense or representation, K.S.A. 21-3755(b)(1)(B) requires a further act of a defendant: that the defendant acted with the intent to defraud.

The computer fraud statute under which Baldhir was convicted prohibits two distinct types of conduct using a computer: (1) to defraud or (2) to obtain money, property, services or any other thing of value by means of false or fraudulent pretense or representation. K.S.A. 21-3755(b)(1)(B). Here, the State charged Baldhir only under the second prong of this statute. Both prongs of this statute require a specific intent element. To illustrate, both prongs require the devising or executing of a scheme or artifice with intent (1) to defraud or (2) to obtain money, property, services or any other thing of value by means of false or fraudulent pretense or representation. If the scheme or artifice is reasonably calculated to deceive a person of ordinary intelligence, the devising or execution of that scheme or artifice is relevant to show that the defendant has acted with the intent to defraud.

Without a trial court instructing the jury on the specific intent element—that the defendant devised or executed a scheme or artifice with the intent (1) to defraud or (2) to obtain money, property, services or any other thing of value by means of false or fraudulent pretense or representation—the defendant could be convicted of computer fraud without any intent on the defendant's part to deceive or cheat someone. Thus, K.S.A. 21-3755(b)(1)(B) is a specific intent crime.

We need not analyze the requisite intent for attempt, as our Supreme Court has interpreted attempt as a specific intent crime. See *State v. Brown*, 291 Kan. 646, 654, 244 P.3d 267 (2011). Thus, we move to our next question: Did the trial court commit reversible error in failing to give an instruction on ignorance or mistake of fact?

*Standard of Review*

The standard of review for a trial court's failure to give a jury instruction depends on whether the defendant requested or objected to the instruction. In this case, Baldhir requested the ignorance or mistake of fact instruction. Thus, the standard of review is as follows:

"When a party has objected to an instruction at trial, the instruction will be examined on appeal to determine if it properly and fairly states the law as applied to the facts of the case and could not have reasonably misled the jury. In making this determination an appellate court is required to consider the instructions as a whole and not isolate any one instruction." *State v. Appleby*, 289 Kan. 1017, 1059, 221 P.3d 525 (2009).

" 'When the trial court refuses to give a requested instruction, an appellate court must review the evidence in a light most favorable to the party requesting the instruction.' " *State v. Ransom*, 288 Kan. 697, 713, 207 P.3d 208 (2009).

" ' "A defendant is entitled to instructions on the law applicable to his or her theory of defense if there is evidence to support the theory. However, there must be evidence which, viewed in the light most favorable to the defendant, is sufficient to justify a rational factfinder finding in accordance with the defendant's theory." ' " *State v. Hendrix*, 289 Kan. 859, 861, 218 P.3d 40 (2009).

*Jury Instructions*

Baldhir argues that the trial court committed reversible error in refusing to give an instruction on ignorance or mistake of fact pat-

terned on PIK Crim. 3d 54.03. Specifically, Baldhir argues that the trial court erred in refusing to give an ignorance or mistake of fact instruction because it viewed the evidence in the light most favorable to the State instead of the light most favorable to him. On the other hand, the State maintains that Baldhir was not entitled to the ignorance or mistake of fact instruction because he presented insufficient evidence to "justify a rational factfinder finding in accordance with a mistake of fact instruction."

Baldhir's primary defense theory was that he did not know the sting ticket was a winning ticket when he scanned it. Indeed, Baldhir's counsel relied on this theory during opening and closing argument, and Baldhir testified in conformance with this defense theory at trial. In particular, Baldhir testified that he mistakenly believed the sting ticket was not a winning ticket because the lottery terminal did not play music when he scanned the ticket. Moreover, Baldhir testified that he relies primarily on the music to determine if a ticket is a winner and that he did not check the message on the terminal when he scanned Schliffke's tickets because he was busy. When a lottery terminal is functioning properly, it will play music if a winning ticket is scanned. At trial, Schliffke, who testified for the State, stated that he did not hear music when Baldhir scanned the sting ticket. The lottery terminal's failure to play music as it was designed to do when a winning ticket is scanned, coupled with Baldhir's failure to check the terminal message, supports Baldhir's assertion that he did not know the sting ticket was a winning ticket when he scanned it.

In addition, Baldhir maintains that the State's evidence failed to show that the lottery terminal was working properly when he scanned the tickets. In other words, if the lottery terminal was not working properly, Baldhir would not have known the sting ticket was a winning ticket when he scanned it. At trial, Schliffke testified that after he gave Baldhir the tickets, he turned his back to the register. Thus, Schliffke did not see whether "Claim at Lottery" was displayed on the terminal when Baldhir scanned the tickets. To support his position on appeal, Baldhir relies on a 42-page report, marked as Exhibit A, that was admitted into evidence at trial. The report showed all of the transactions from July 29, 2009, that

occurred on the lottery terminal in Baldhir's store. Baldhir notes that the following error codes occurred on the terminal throughout the day:

"[A]n error code reading '#SYND_BAD_EXTERN_RECID' occurred at 3:22:46, the first entry of the day. . . . That same error code appeared four more times at 5:15, fifteen times between 17:06:18 and 18:16:47, and five times at 19:04:06. An error code reading '#BADRED' occurred 39 times throughout the day, both before and after [Baldhir] scanned Mr. Schliffke's tickets. An error code reading '179' occurred ten times from 17:09:08 to 17:14:07."

Because the report showed that the terminal had numerous errors throughout the day, an inference can be made that the terminal was not working properly when Baldhir scanned the tickets. If the terminal was not working properly because it failed to play music or show the appropriate message, Baldhir would not have known that the sting ticket was a winning ticket when he scanned it.

Viewed in the light most favorable to Baldhir, these facts support his argument that the trial court should have given an ignorance or mistake of fact instruction. In other words, this evidence would be sufficient to justify a rational factfinder finding in accordance with Baldhir's defensive theory under both his computer fraud and attempted theft charges. Consequently, the trial court erred in refusing to give the ignorance or mistake of fact instruction based on the State's charges that Baldhir had committed computer fraud and attempted theft on July 29, 2009. The trial court's error, however, does not end our analysis. Next, we must determine if the trial court's refusal to give the instruction was reversible error.

*Reversible Error*

When determining if the trial court's failure to give a requested jury instruction is reversible error,

"an appellate court cannot consider the requested instruction in isolation. Rather, the court must consider all of the instructions together as a whole. If the instructions as a whole properly and fairly state the law as applied to the facts of the case, and the jury could not reasonably be misled by them, the instructions are not reversible error even if they are in some way erroneous." *State v. Jackson,* 280 Kan. 541, 550, 124 P.3d 460 (2005).

The computer fraud instruction under which the jury convicted Baldhir stated the following:

"The defendant is charged with committing a computer crime. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. That the defendant used a computer or computer network for the purpose of executing a scheme for the purpose of obtaining property by means of false or fraudulent pretense or representation.

"2. That this act occurred on or about the 29th day of July, 2009, in Johnson County, Kansas."

The trial court gave a presumption of intent instruction which read as follows:

"Ordinarily, a person intends all of the usual consequences of his voluntary acts. This inference may be considered by you along with all the other evidence in the case. You may accept or reject it in determining whether the State has met its burden to prove the required criminal intent of the defendant. This burden never shifts to the defendant."

But this instruction stating that "a person intends all of the usual consequences of his voluntary acts" is " 'a rule of evidence and does not fulfill the required element of criminal intent necessary for conviction in those cases where criminal intent is a necessary element of the offense.' [Citation omitted.]." *State v. Mason*, 238 Kan. 129, 135-36, 708 P.2d 963 (1985). Because we have determined that computer fraud is a specific intent crime, the presumption of intent instruction would have been insufficient to apprise the jury that it could convict Baldhir only if it was proven beyond a reasonable doubt that he carried out "a scheme for the purpose of obtaining property by means of false or fraudulent pretense or representation" with the intent to defraud.

Moreover, the trial court is required to include the specific intent element in the jury instructions: "When a crime requires a specific intent, that specific intent element 'must be included in the charge and the instructions of the court covering the separate elements' of the crime." *Richardson*, 289 Kan. at 121. Here, the specific intent element was not included in the trial court's jury instructions.

Without the trial court instructing the jury on the specific intent element—that Baldhir devised or executed a scheme or artifice with the intent to obtain money, property, services or any other thing of value by means of false or fraudulent pretense or representation—the trial court's instructions that it gave to the jury did not preclude a conviction of Baldhir on the basis of mistake. Thus, the trial court committed reversible error in failing to include the specific intent element in the jury instructions and to give an ignorance or mistake of fact instruction for Baldhir's computer fraud charge.

Moreover, the computer fraud charge and the attempted theft charges are so closely interwoven that the outcome of the computer fraud charge will most likely determine the outcome of the attempted theft charge. Because we are reversing the computer fraud conviction, we reverse the attempted theft conviction as well and remand both the computer fraud and the attempted theft charges for a new trial.

*Insufficiency of Evidence*

Baldhir contends that the State failed to present sufficient evidence to convict him of computer fraud and attempted theft. To determine whether evidence is sufficient to uphold a conviction, we apply the following standard of review:

"When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after a review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. McCaslin*, 291 Kan. 697, Syl. ¶ 7, 245 P.3d 1030 (2011).

Moreover, in determining whether there is sufficient evidence to support a conviction, an appellate court generally will not reweigh the evidence or the credibility of witnesses. *State v. Hall*, 292 Kan. 841, 859, 257 P.3d 272 (2011). It is only in rare cases where the testimony is so incredible that no reasonable factfinder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

*Computer Fraud Charge*

In examining the evidence in the light most favorable to the State, the State presented sufficient evidence for a rational juror to have found Baldhir guilty of computer fraud. During the trial, the State called Robert Heptig and Casey Fulton as witnesses. Both Heptig and Fulton were employees of GTECH Corporation (GTECH), a worldwide lottery gaming company that provides support to the Kansas Lottery. Specifically, GTECH provides hardware and software for the lottery games. Moreover, it provides field support to the stores that carry lottery games. Heptig, who was a supervisor of GTECH service technicians, explained GTECH's field support procedures. The field service technicians were to ensure that the lottery terminals were operating properly, along with performing preventive maintenance on the terminals. When a store had a problem with a terminal, they called a GTECH hotline. The GTECH hotline kept track of when a call was placed and where that call came from.

The State maintains that there was no indication from GTECH's internal documents that the lottery terminal was malfunctioning when Baldhir scanned the sting ticket. To support its argument, the State relies on the testimony of Fulton. During the trial, Fulton—one of GTECH's quality assurance employees—testified that the internal code errors from the 42-page report would not have been displayed on Baldhir's terminal. Instead, Baldhir's terminal would have displayed "winner" or "Sorry not a winner." Moreover, the State notes that Baldhir did not call GTECH for service support when he scanned Schliffke's ticket. If the terminal was malfunctioning as Baldhir maintained, then someone from the store would have called GTECH's support hotline. Because Baldhir failed to do so, an inference can be made that the terminal was functioning properly. Fulton did admit, however, that someone from the Soods' store placed service calls to GTECH at 5:21:42 p.m. and 6:15:02 p.m. But the State points out that these calls were too remote from when Baldhir scanned the earlier sting ticket to support his position that the terminal was not working properly. In other words, simply because the terminal was having issues be-

tween 5 and 6 p.m. does not necessarily mean that the terminal was malfunctioning when Baldhir scanned the sting ticket at 11:55:15 a.m.

The State also relies on Baldhir's experience with the lottery terminals to support its position that it presented sufficient evidence. At trial, Baldhir testified that he had sold lottery tickets for over 7 years and that he was familiar with the terminal's readout based on the value of the ticket, *i.e.*, if a ticket was worth $600 or more, the display would read "Claim at Lottery," and if the ticket was worth less than $600, the display would read "winner" and would state the amount of the prize. Based on Baldhir's experience, an inference can be made that he scanned the ticket, realized it was worth a large amount, and decided to keep it for himself because Schliffke's back was turned when Baldhir scanned the sting ticket.

Finally, the State relies on Baldhir's 18-year marriage to Jiwan, coupled with Jiwan's actions in attempting to claim the prize money. Specifically, the State maintains that

"[b]ased on the evidence, a reasonable jury could conclude that [Baldhir] took the ticket, and asked his wife to claim it at the Lottery. On July 30, 2009, the day after Schliffke presented the [sting] ticket, Jiwan Sood called the Lottery, claimed she owned the ticket, confirmed the $25,000 prize, and wanted a check issued that day."

After viewing the evidence in the light most favorable to the State, we determine that the evidence was sufficient for a rational juror to have found Baldhir guilty of computer fraud beyond a reasonable doubt.

### Attempted Theft Charge

The State also presented sufficient evidence for a rational juror to have found Baldhir guilty of attempted theft. The State points to the following evidence in support of Baldhir's attempted theft conviction: that Baldhir had sold lottery tickets for over 7 years; that he was familiar with how lottery terminals worked; that there was no indication from GTECH's internal documents that the lottery terminal was malfunctioning when Baldhir scanned the sting ticket; and that Baldhir's wife, with whom he had shared an 18-

year marriage, called the Lottery office the day after her husband had scanned the sting ticket, claiming that she owned the sting ticket, confirming the prize amount of $25,000 for the sting ticket, and requesting a check for that amount the same day.

Viewing the evidence in the light most favorable to the State, we determine that the evidence was sufficient for a rational juror to have found Baldhir guilty of attempted theft beyond a reasonable doubt.

Affirmed in part, reversed in part, and remanded with directions.