No. 47,589

THE STATE OF KANSAS, *Appellee,* v. HOWARD CARNEY, *Appellant.*

(533 P. 2d 1268)

Opinion filed April 5, 1975.

*Paul W. Clark,* of Topeka, argued the cause, and was on the brief for the appellant.

*Gene M. Olander,* district attorney, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal in a criminal case in which the defendant-appellant, Howard Carney, was convicted of aggravated robbery as defined by K. S. A. 1970 Supp. 21-3427. The only real issue in the case was the identity of the defendant as the robber. The record discloses that on October 8, 1971, the Powers Liquor Store located at 1506 East 10th Street in Topeka was robbed. At about 9:00 a. m. on that morning Mrs. Charlene Powers, the owner, opened the store and started the day out with about $35 in cash. She made one sale during the morning in the amount of $15.17. At approximately 11:30 a. m. a young black man came to the store and ordered a fifth of Johnnie Walker red. When Mrs. Powers turned to pick up the bottle, the customer pulled a gun from under his shirt and demanded the money from the cash register. She immediately

handed him $50 in cash from the cash register and the robber fled the scene. Some of the bills were held together by a paper clip.

As soon as the robber left the store Mrs. Powers immediately ran from the store to the premises across the street where two men were working on a school bus. She advised them that she had been robbed. At this time she observed an individual wearing beige or gray trousers, a maroon shirt and a gray or beige hat running down the alley. This individual was dressed in the same way as the robber who had held her up. She observed him get into a Buick Riviera either gray or silver, with a dent in the right rear side of the vehicle. One of the mechanics ran up the alley after the robber and the other mechanic got in his bus and pursued the robber as the latter drove away. William Pressgrove, one of the mechanics, testified that Mrs. Powers came out of the store shouting that she had been robbed and pointed up the alley to the north to a man he observed running up the alley. He was wearing a floppy hat, a maroon knit shirt, and gray trousers. He immediately ran up the alley after the individual, saw him jump in a car and take off. He described the getaway vehicle as a grayish Buick Riviera approximately a 1967 model with the right rear quarter panel smashed in just above the tire. He identified the fleeing robber as a black man.

Robert Milner testified that he was working on the bus across the street from the liquor store. He observed a black man run out of the store followed by Mrs. Powers who shouted she had been robbed. The man had on a wide hat with a maroon shirt and tan trousers. On observing the man run down the alley, Milner jumped into a truck drove it down the street and came up behind a gray or silver Buick Riviera. The Buick was driven down 6th Street, ran a stop light and proceeded east on 6th Street. Milner followed the Buick for about four or five miles. He wrote the license number of the Buick Riviera on a piece of paper and gave it to a uniformed sheriff patrol officer who was sitting on 6th Street at a traffic tieup. Milner advised the sheriff's officer that Mrs. Powers had been robbed and described the vehicle that he had been following.

A description of the robber's car was broadcast over the police radio network. Wayne Turner, a Leavenworth county deputy sheriff, picked up the Shawnee county broadcast over his radio at approximately 12:05 a. m. He observed a vehicle matching the description he had received from Shawnee county going in an easterly direction through the Highway 24-40 and Highway 16

junction near Tonganoxie. He followed behind the vehicle and observed the license tag number was the same as that contained in the radio description. He then called another officer to help and observed that the vehicle had damage to the right rear quarter panel. The vehicle was stopped two miles east of Tonganoxie on Highway 24. The driver was then ordered out of the car and was arrested for armed robbery. The driver was identified as the defendant, Howard Carney. Immediately following the arrest deputy sheriff Turner removed a wad of bills from the left front pocket of the defendant, consisting of twenty-five $1.00 bills, one $10.00 bill, and three $5.00 bills. Some bills were held together by a paper clip but he did not know how many. The defendant on arrest denied that he had been in Topeka and stated that he had been to Lawrence. After the defendant was taken into custody, the $50 in currency taken from his person was delivered to the dispatcher-jailer at the Leavenworth county jail. At the time the defendant was arrested there was no hat or gun found in his vehicle. The defendant denied that he was the robber. At the trial the defendant took the stand and testified that on the morning of October 8, he had left Kansas City wearing red pants and a red shirt, that he had driven to Topeka to visit his sister but found on arrival that she had moved and he could not find where she had moved to. He then drove around Topeka trying to locate some of his other friends and finally left Topeka by way of 6th Street. While going down 6th Street he noticed a van behind him. He stated that he did not stop at the Powers Liquor Store and did not own a floppy hat or gun and that he did not change his trousers at any time during that morning, that he proceeded toward Kansas City as he needed to pick up his roommate at work. Near Leavenworth he was stopped by the police. He was told that he was under arrest for a robbery in Topeka.

The defendant also called as alibi witnesses, his brother, David Carney, his mother, Mildred Carney, and his roommate, William Gilliard. Both David Carney and Mildred Carney testified that Mrs. Powers had stated that she was not sure that it was the defendant who had committed the robbery and that she wanted to drop the charges. Mildred Carney further testified that just prior to the robbery she had given her son either $30 or $31 consisting of two $5 bills, a $20 bill, and three $1 bills, and that the money did not have a paper clip on it. William Gilliard testified that on the

morning of the robbery defendant had left Kansas City to go to Topeka to visit his sister at approximately 6:00 a. m. wearing a red body shirt and black and red trousers.

Charlene Powers was called in rebuttal by the state and denied that she had ever told anybody that she was not sure who had robbed her. The case was submitted to the jury who returned a verdict of guilty of aggravated robbery. The defendant has appealed to this court alleging trial errors.

The defendant's first point on this appeal is that the trial court erred in overruling the defendant's motion to suppress evidence of identification obtained at a lineup held on October 11, 1971. The defendant maintains that the lineup was unnecessarily suggestive because the other three individuals in the lineup differed greatly from the defendant in their physical characteristics and for the further reason that Mrs. Powers testified that she had previously seen two of the other individuals prior to the lineup. The defendant filed a motion to suppress the identification at the lineup and a hearing was held thereon prior to trial. We agree with the defendant that a pretrial lineup should be carefully scrutinized where a claim has been raised that a lineup was unnecessarily suggestive or conducive to irreparable mistaken identification. (*State v. McCollum*, 211 Kan. 631, 507 P. 2d 196.) Here after a full evidentiary hearing the trial court found that the victim, Mrs. Powers, had identified the defendant on the scene independently of the lineup. It is undisputed that the defendant was represented by his counsel at the time the lineup was conducted. The trial court further found that under the totality of the circumstances the lineup was not unnecessarily suggestive. We have carefully considered the record presented at the evidentiary hearing on the motion to suppress and we have concluded that the findings of the trial court are supported by the evidence and should not be disturbed.

The defendant next contends that the trial court erred in admitting into evidence documentary evidence of a prior conviction of the defendant of first-degree robbery in Missouri. The record does not disclose defendant's objection to the relevancy of the prior conviction, nor is exhibit No. 1 reproduced in the record for the court's consideration on this appeal. As originally offered by the state exhibit No. 1 apparently consisted of a photograph of the defendant Carney, a fingerprint record, a signature card, a copy of the journal entry, the authentication of the journal entry from the

Missouri court, and a commitment report showing vital statistics of the defendant including the names and addresses of his relatives and other information. The defendant's objection to exhibit No. 1 as contained in the record goes to the number of documents contained in the exhibit, not to its relevancy to prove identity. He objected particularly to the fingerprint record and urged that it was sufficient for the state simply to offer the journal entry and the authentication of the signature appearing on the certificate. The trial court deleted certain portions of exhibit No. 1 and reduced it to a photograph of Carney, a fingerprint record showing his signature, and the authenticated journal entry. We cannot say that the trial court abused its discretion in admitting exhibit No. 1 restricted to the documents just mentioned. We find no reversible error on this point.

The defendant's next point concerns the admissibility of state's exhibit No. 2 consisting of currency and coins in the amount of $51.40 which the testimony showed was taken from the pocket of the defendant at the time he was arrested. Mrs. Powers had testified that at the time the robbery of the liquor store occurred the robber was handed $50 in cash, a part of which was secured together by a paper clip. When the defendant Carney was arrested there was discovered a wad of bills in his left front pocket consisting of $1 bills, a $10 bill, and three $5 bills, some of which were clipped together with a paper clip. Defendant objected to the admission of exhibit No. 2 on the grounds that a proper chain of custody had not been established by the prosecution. It is true that the chain of custody was not as good as it might have been. The evidence showed that deputy sheriff Turner had removed the wad of bills from the defendant's person and delivered the money to an undetermined sheriff's dispatcher in the Leavenworth jail. This was at 12:05 p. m. on October 8. That afternoon Detective Acker obtained from some unnamed Leavenworth jailer the money which he understood had been taken from the defendant's person. This money was offered as state's exhibit No. 2. We believe that any defect in the chain of custody under the circumstances here should go to the weight rather than to the admissibility of the evidence. Here no attempt was made to show that the serial numbers of the bills taken at the robbery and those taken from defendant's person at the time he was arrested were the same. The close correlation between the amount of money taken and the amount of money found on the defendant's person was simply circumstantial evidence pertaining to the issue of identity. We cannot find that

the trial court abused its discretion in the admission of this exhibit into evidence.

The defendant's final point is that the court erred in not allowing defense witness, William Gilliard, to testify in regard to money which he allegedly gave to the defendant on the day of the robbery. The court excluded this testimony because Gilliard had violated the court's order separating witnesses. The record shows the separation rule was invoked at the request of the defendant's counsel. All witnesses were directed to remain out of the courtroom during the testimony of other witnesses. Gilliard was the defendant's roommate and remained in the courtroom listening to all of the state's testimony, which fact the defendant and his counsel obviously knew. Gilliard had previously been designated as a witness to testify in support of the defendant's plea of alibi. After the state rested its case, counsel for the defendant advised the court that Mr. Gilliard would testify that he had given some money to the defendant on the morning of the robbery. On objection by the state the trial court ruled that Gilliard could testify in regard to the defense of alibi but that it would be an unfair advantage to allow Gilliard to testify as to sums of money delivered to the defendant on the morning of the robbery in view of the fact that Gilliard had remained in the courtroom and heard the testimony of the state's witnesses pertaining to the exact amount of money taken in the robbery and the exact amount of money recovered on the defendant's person at the time he was arrested. Following this ruling Gilliard testified as to the defendant's alibi but was not permitted to testify in regard to his giving money to the defendant. We cannot say under the circumstances here that the trial court abused its discretion in refusing to permit Gilliard to testify after Gilliard, with the defendant's full knowledge, had violated the separation order. The defendant on this appeal argues vigorously that it was prejudicial error as a matter of law for the court to exclude Gilliard's testimony in view of our decision in *Davenport v. Ogg.*, 15 Kan. 363. In *Davenport* the court made a separation order excluding from the courtroom during the trial all witnesses except such witness as may at any time be called in for examination. One of the plaintiff's witnesses, without the knowledge or consent of plaintiff or his attorney, violated the order and remained in the courtroom during the entire proceedings. We held that any person violating a separation order could be punished therefor for contempt, but that it was error for the court to exclude his testimony

simply because of such violation where there was nothing in the record to show that the party himself had participated in the guilt of the witness.. In *Davenport*, however, it is pointed out that if the party who wishes to examine the witness abets the violation of the order of the court, the evidence of the witness may be excluded by the court. Here the record before us discloses that the witness Gilliard was the defendant's roommate and that the defendant and his counsel were fully aware that Gilliard remained in the courtroom and heard the state's testimony in the face of the separation order which defendant had requested. Under the circumstances we cannot say that the trial court abused its discretion in excluding the testimony. Our more recent cases hold that the violation of a court order separating the witnesses in a criminal case does not of itself disqualify a witness and the trial court in its discretion may permit the witness to testify. (*State v. Blocker*, 211 Kan. 185, 505 P. 2d 1099.) Ordinarily where a witness violates a separation order without the knowledge of the party or his counsel, the witness should be permitted to testify and it is only where the evidence shows that the party who desires to call the witness knew and participated in the violation of the separation order that the court should exclude the witness's testimony. Under the circumstances shown in the record here we cannot say that the trial court abused its discretion in excluding the proffered testimony.

The judgment is affirmed.

FROMME, J., not participating.