No. 55,457

STATE OF KANSAS, *Appellee,* v. JERRY L. HANDLEY, *Appellant.*

(673 P.2d 1155)

Opinion filed December 2, 1983.

*William P. Tretbar,* of Fleeson, Gooing, Coulson & Kitch, of Wichita, argued the cause and was on the brief for appellant.

*James D. Hall,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, *Clark V. Owens,* district attorney, and *Geary N. Gorup,* assistant district attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: Jerry L. Handley appeals from his conviction by a jury of one count of aggravated robbery, K.S.A. 21-3427. Numerous alleged trial errors are asserted on appeal, none of which has merit. We affirm.

Late in the evening on September 13, 1982, four men sought shelter in the downtown Wichita Macy's parking garage. One of the four men, Anthony Kondrath, is the complaining witness in this case. He was personally acquainted with only one of the other men in the group, Kenneth Wertz, and did not know the names of their two companions. At about 2:00 a.m., September 14, 1982, Kondrath awoke to the sounds of screams, and found two new unknown men attacking his companions with pieces of two-by-four-inch lumber. Kondrath tried to run but was stopped by one of the assailants. Kondrath was struck several times with the two-by-fours and was forced to give his attackers seventy-five cents, consisting of a quarter and a Kennedy fifty-cent piece. The two men also allegedly robbed the other men who had been in the garage with Kondrath. After the two assailants departed, Kondrath was able to get to a telephone and summon help through the telephone operator. Police and an ambulance arrived and Kondrath, along with one of the other men, was transported to St. Francis Hospital for treatment of his wounds. The police, having obtained a description of the two assailants, broadcast the information about the robberies including physical descriptions of the men sought.

Within minutes after receiving the radio dispatch, a Wichita

police officer began patrolling Broadway near the scene of the crime. He came upon two individuals walking south away from the direction of the garage. On approaching the two men he noted that one had a torn shirt and blood on the knuckles of his hand. The officer recognized one of the men as Ronald Holman, but did not know the second individual and asked him for some identification. This man, the defendant, produced a beige-colored billfold and handed it to the officer. The officer opened the wallet and found an identification card issued by the Kansas Department of Social and Rehabilitation Services being the name "John Caudill." The background information contained on the card placed John Caudill in the middle fifties age bracket. As the officer was inspecting the billfold he asked the defendant, who was twenty-four years old, his name. Defendant replied, "Jerry Handley." Both Holman and Handley were taken into custody and, after being taken to the bus station and St. Francis Hospital for identification by the victims, were transported to the police station. Upon being booked Holman was found to have a Kennedy fifty-cent piece and three quarters on his person and defendant had a second wallet in his possession with identification in the name of Jerry Handley. The two were then charged with four counts of aggravated robbery of Tim Alexander, John Caudill, Anthony Kondrath and Kenneth Wertz. At the time of trial only Kondrath could be located and the other three counts of aggravated robbery were dismissed.

At trial defendant testified that he and his brother Holman were the victims on the night in question. He and Holman were innocently walking past the Macy's garage in Wichita when they were attacked by four men wielding clubs he described as being table legs. After he and his brother had disposed of the four attackers and left them "picking theirself up off the floor at Macy's" the two of them "walked away from it." He contended no threats were made and no robbery took place. On cross-examination defendant corroborated the police officers' testimony about the Caudill billfold but could not explain how he happened to be in possession of it. He also admitted that at the time he was first approached by the police officers, and for several hours thereafter, he did not tell them that he and his brother had been attacked by a group of men at the garage.

Three of appellant's six claims stem from the admission into

evidence of the wallet containing the Caudill identification, and testimony concerning defendant's possession and use of the wallet. Handley asserts that the introduction of this evidence denied him his constitutional right of confrontation, subjected him to an impermissible compulsion to testify, and constituted an abuse of discretion by the trial court. The premise underlying all of appellant's objections is that the wallet and its contents were hearsay evidence improperly presented to the jury.

There can be no serious question about the independent relevance and admissibility of this evidence taken from the defendant.

"Items found in the possession of a defendant at the time he is taken into custody are part of the total circumstances surrounding his presence near the scene of a crime and are pertinent as tending to explain his actions at the time of arrest and his purpose for being in the vicinity. Such evidence of attending circumstances, including property found in the accused's possession, is relevant and admissible when the circumstances logically tend to connect the accused with the crime charged." *State v. Baker,* 219 Kan. 854, 859, 549 P.2d 911 (1976).

Assuming that the identification card and wallet of John Caudill could be classified as hearsay evidence, a determination which is by no means clearly established, the evidence was admissible independent of a hearsay objection. We have previously held:

"Acts done or declarations made before, during or after the happening of the principal occurrence may be admissible as part of the res gestae where the acts or declarations are so closely connected with it as to form in reality a part of the occurrence." *State v. Sherry,* 233 Kan. 920, Syl. ¶ 6, 667 P.2d 367 (1983).

Chief Justice Schroeder discussed res gestae declarations in *State v. Rider, Edens & Lemons,* 229 Kan. 394, 625 P.2d 425 (1981), wherein it was stated:

"Unsworn declarations received as part of the *res gestae* do not depend for their effect on the credibility of the declarant, but derive probative force from their close connection with the occurrence which they accompany and tend to explain. *They are admissible as original evidence,* although it is frequently stated that they are received as an exception to the hearsay rule." (Emphasis added.) 229 Kan. at 404.

Appellant had a full opportunity to confront and cross-examine the police officers as to the circumstances surrounding his possession and use of the Caudill wallet. It is well settled that the right of confrontation is satisfied when the defendant has had an opportunity to cross-examine the witness against him. *State v. Thrasher,* 233 Kan. 1016, 666 P.2d 722 (1983).

The defendant next claims that the admission of this evidence subjected him to an impermissible compulsion to testify, relying on the dissenting opinions in *United States v. Gainey,* 380 U.S. 63, 13 L.Ed.2d 658, 85 S.Ct. 754 (1965). The State aptly points out that the defendant never raised this issue before the trial court, and we therefore decline to consider it for the first time on appeal. K.S.A. 60-404; *State v. Garcia,* 233 Kan. 589, 608, 664 P.2d 1343 (1983).

Third and finally with regard to the Caudill wallet, the defendant claims that the trial court abused its discretion in admitting the Caudill identification card because of its hearsay aspect. Having determined that the evidence was admissible independent of its alleged hearsay character there was, of course, no abuse of discretion by the trial court.

Appellant's fourth contention on appeal is that the trial court erred in refusing to declare a mistrial or suppress the complaining witness' testimony after he violated the court's order of sequestration and separation of witnesses. Prior to trial both parties agreed to sequester the witnesses. Before the commencement of the trial proceedings on the second day, defense counsel encountered the complaining witness, Anthony Kondrath, sitting in the witness room along with a police detective who interviewed defendant after his arrest. The detective was also a witness in the case. Although defense counsel did not overhear the entire conversation, he did overhear the detective say to Kondrath, "[I]t was a 1979 half-dollar, wasn't it?" Counsel brought the matter to the attention of the court and sought a mistrial. The prosecuting attorney conceded he had not informed his witnesses of the court's order or explained to them what it meant. The court denied the motion for a mistrial but granted defendant great leeway in examining the State's witnesses about the communication. For over one hundred years, it has been the law of this state that violation of a court order separating witnesses does not ordinarily disqualify a witness from testifying and the trial court, in its discretion, may admit the testimony. *Davenport v. Ogg,* 15 Kan. 363 (1875). See also *State v. Cantrell,* 234 Kan. 426, 673 P.2d 1147 (1983), and cases cited therein. Appellant's fourth point lacks merit. However, we repeat the following from *Cantrell:*

"We have previously recognized that any person violating a separation order

could be punished therefor by contempt, although the admission of the testimony is generally proper unless a party to the action participated in the guilt of the witness. *State v. Carney*, 216 Kan. 704, 709-10, 533 P.2d 1268 (1975). In certain instances contempt proceedings against an attorney for failing to properly advise the witnesses of a sequestration order may be an appropriate sanction." p. 431.

Appellant next contends that the trial court erred in failing to submit a jury instruction on the reliability of eyewitness identification as contemplated in *State v. Warren*, 230 Kan. 385, 635 P.2d 1236 (1981). The argument is wholly without merit. Appellant admitted he was present at the fracas at the Macy's garage and identification was not an issue in the trial. The only question was whether appellant was the attacker or the attackee.

Next he contends the trial court erred in failing to instruct on the lesser included offense of robbery. Again, the argument lacks merit. All parties concede that clubs were wielded in the confrontation and Kondrath had to be transported to St. Francis Hospital for treatment of his wounds. There was no evidence which would warrant an instruction on robbery. Appellant was either guilty of aggravated robbery or no robbery at all. *State v. Lomax & Williams*, 227 Kan. 651, 608 P.2d 959 (1980).

Next appellant asserts error in the failure of the trial court to grant his motion for judgment of acquittal.

"A trial judge in passing on a motion for judgment of acquittal must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact therefrom, a reasonable mind, or rational trier of facts, might fairly conclude guilt beyond a reasonable doubt." *State v. Mack*, 228 Kan. 83, 89, 612 P.2d 158 (1980).

A careful review of the record in this case leads to the inevitable conclusion that there was sufficient evidence to support the conviction and the motion for acquittal was properly overruled.

Finally, appellant claims he is entitled to a new trial because the prosecution withheld information concerning Anthony Kondrath's criminal history. The State checked the records and advised counsel for appellant that Kondrath had no criminal history. However, after informing defendant that Kondrath had no criminal history, the State later learned that Kondrath had been charged in the Wichita Municipal Court with misdemeanor theft. Handley was convicted of aggravated robbery in the present case on January 26, 1983; Anthony Kondrath pled guilty to the misdemeanor theft charge one day later, January 27, 1983. The State conveyed this information to defense counsel and sent

a written stipulation of facts upon which the defendant requested a new trial. After reviewing briefs for both sides, the trial court denied defendant's motion. We find no error. The lack of a conviction renders evidence of a pending charge inadmissible to impeach a witness's credibility; K.S.A. 60-421 specifically requires a conviction before evidence of a crime is admissible for that purpose. *State v. Lomax & Williams,* 227 Kan. 651, 655 (1980); *State v. Johnson,* 219 Kan. 847, 852, 549 P.2d 1370 (1976). In the present case, Kondrath had not been convicted on January 25, 1983, the date he testified against Handley. In addition, it is clear that the information about the pending charge against Kondrath was not intentionally withheld from the defendant and there was no bad faith involved. See *State v. Kelly,* 216 Kan. 31, Syl. ¶ 2, 531 P.2d 60 (1975).

The judgment is affirmed.