No. 58,369

STATE OF KANSAS, *Appellee*, v. PETER H. RANSOM, *Appellant*.

(722 P.2d 540)

Opinion filed July 18, 1986.

*Ralph J. De Zago*, of Junction City, argued the cause and was on the brief for appellant.

*Steven L. Opat*, county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: Peter H. Ransom appeals his jury trial convictions of aggravated kidnapping (K.S.A. 21-3421), aggravated battery (K.S.A. 21-3414), rape (K.S.A. 21-3502), and misdemeanor theft (K.S.A. 21-3701).

This is the third time this case has been before us for decision. The first issue concerns the prior appeal and the facts relative thereto must be set forth in some detail. In June of 1982, the district court (William D. Clement, presiding) dismissed the charges herein on the basis that defendant's statutory speedy trial rights (K.S.A. 22-3402) had been violated. The State ap-

pealed from the dismissal. The appeal was argued on January 14, 1983. Due to the death of Justice Alex Fromme, District Judge Floyd Coffman was appointed to serve temporarily with the court on this docket under authority of Art. 3, § 6(f) of the Kansas Constitution. In a four to three decision filed on March 31, 1983, the district court was affirmed (*State v. Ransom*, 233 Kan. 185, 661 P.2d 392 [1983]). The State filed a motion for rehearing which was granted, in May 1983, by a majority of the six justices of this court participating in the original decision. Thus, the presence and participation of Judge Coffman in the original decision was not a factor in the granting of the rehearing. The case was set for oral argument in September, 1983. On June 17, 1983, Judge Floyd Coffman retired from his position as district judge and, hence, was therefore no longer eligible to sit with this court in other than an advisory capacity as provided by K.S.A. 20-2616(b). The appeal was argued on rehearing before a seven member court (Justice Tyler Lockett having been appointed to succeed Justice Fromme). On December 2, 1983, the opinion on rehearing was filed reversing the district court's dismissal of the charges (*State v. Ransom*, 234 Kan. 322, 673 P.2d 1101 [1983], *cert. denied* 469 U.S. 818 [1984]). On remand, defendant was convicted of the charges previously enumerated and defendant brings this direct appeal therefrom.

For his first issue defendant attacks the granting of the rehearing and the subsequent opinion on rehearing. Defendant contends that his state and federal constitutional rights to equal protection and due process required that Judge Coffman participate in the rehearing rather than Justice Lockett. The point is not well taken for a variety of reasons. This is a collateral attack upon a prior opinion in a different appeal. The same issue was raised on rehearing. Further, as noted earlier, the participation or nonparticipation of Judge Coffman in the decision of whether or not to grant rehearing was irrelevant as the majority of the six regular members of this court participating in the original decision voted to grant rehearing. Also, as previously noted when the case was reargued, Judge Coffman, then retired, was no longer eligible to sit with the court except in an advisory capacity. Further, Justice Lockett was a member of this court at the time of reargument and entitled to participate in all decisions of this court. The motion for rehearing was timely filed and the juris-

diction of this court was retained. Defendant had no vested right to have the case decided on rehearing by the same seven individuals determining the appeal originally.

We conclude this issue is without merit.

For his second issue defendant contends his statutory and constitutional rights to a speedy trial were violated upon remand.

As previously noted, the opinion on rehearing was filed on December 2, 1983. The mandate was issued on January 25, 1984. Trial was scheduled for April 11, 1984. On March 22, 1984, defendant moved for a continuance of the trial setting pending determination of his writ of certiorari in the United States Supreme Court. At that time the district court granted the motions finding all delay therefrom would be charged to the defendant. On October 22, 1984, the district court was advised the writ of certiorari had been denied. The journal entry of that date reflects the following:

"WHEREUPON, the Court inquires of counsel as to when the matter should be set for trial, noting the Orders made on the 22nd day of March, 1984. Upon conferring with counsel and examining its own calendar, noting that it has no time currently available due to the condition of its calendar, the Court sets this matter for trial on February 12, 1985, after ascertaining that such time is agreeable with counsel and that the defendant intends to raise no further question of speedy trial. The Court notes from its Order on the 22nd day of March, 1984, that all such time from said date until the 12th of February, 1985 is charged to the defendant, should the matter of statutory speedy trial be an issue."

The trial herein was commenced on February 12, 1985.

In his brief, defendant does not attempt to compute days chargeable to the State and himself so as to set up a claim of violation of the statutory right of speedy trial (K.S.A. 22-3402). Indeed, we are not advised of whether or not defendant was in jail all of the time pending trial. Suffice it to say the record before us does not reveal any violation of defendant's statutory right to a speedy trial (K.S.A. 22-3402).

As to alleged violation of the constitutional right to speedy trial, the record reflects the mandate was issued on January 25, 1984. Trial was scheduled at a reasonable date thereafter. Defendant sought and obtained an open-ended continuance of the trial date pending determination of his writ of certiorari. On October 22, 1984, trial was set for February 12, 1985, due to the court's crowded docket. Defendant's counsel agreed with this trial setting.

The appellant relies heavily on *Barker v. Wingo*, 407 U.S. 514, 33 L. Ed. 2d. 101, 92 S. Ct. 2182 (1972). In *Barker* the Court found no denial of speedy trial despite the passing of five years between indictment and trial. The Court listed four factors to be considered: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. 407 U.S. at 530. In finding no violation of the right the Court emphasized that the "record . . . strongly indicates . . . that the defendant did not want a speedy trial." 407 U.S. at 536. The Court also said, "We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." 407 U.S. at 532.

We conclude there is nothing in the record before us even approaching a violation of defendant's constitutional right to a speedy trial.

We turn now to the issues raised relative to alleged trial errors. At this point a summary of the facts is appropriate.

On July 3, 1981, Ms. B was attempting to locate a party at Milford Lake. She became lost and her automobile became mired in mud on a gravel road. She saw some cars parked nearby and thought she was in the right place after all. A man walked over and used foul language to her. She then realized the group was not the party she was seeking and that the members looked disreputable. She became concerned and started walking down the road. Four men started to chase her. She started running, outdistancing all but the defendant. She ran about a mile when an old pickup truck passed her from the opposite direction. The vehicle stopped, defendant climbed on the running board, and the vehicle backed up to her location. Defendant jumped off the truck and grabbed her. The truck left.

Defendant beat Ms. B, dragged her back and forth across the road, burned her hair with a cigarette lighter, and raped her twice. Money was taken from Ms. B's purse and the defendant walked away.

Defendant, for his third issue (first claimed trial error), contends the district court erred in refusing to admit the hearsay statement of Mark Carpentiere.

Frank Creach testified defendant made incriminating statements to him relative to the crimes herein while they were both incarcerated in the Morris County jail in 1982. Mark Carpentiere,

another jail inmate, told a KBI agent, in 1982, that this conversation did not occur. The district court refused to permit the KBI agent to testify as to what Carpentiere had told him. Carpentiere did not testify.

Defendant made *no* attempt to locate Mark Carpentiere until the day before trial, but instead assumed he could find Mark Carpentiere in Leavenworth State Prison even though Mr. Carpentiere had been paroled therefrom in 1982. The court refused to admit Mr. Carpentiere's statement because there was no showing: (1) Carpentiere was unavailable as a witness; and (2) of due diligence on the part of the defense in attempting to locate the declarant and bring him to court.

Defendant relies on K.S.A. 1985 Supp. 60-460(d)(3) which allows as an exception to the hearsay rules an admission of the statement:

"if the declarant is unavailable as a witness, by the declarant at a time when the matter had been recently perceived by the declarant and while the declarant's recollection was clear and was made in good faith prior to the commencement of the action and with no incentive to falsify or to distort."

K.S.A. 60-459 defines "unavailable as a witness" as follows:

"(g) 'Unavailable as a witness' includes situations where the witness is (1) exempted on the ground of privilege from testifying concerning the matter to which his or her statement is relevant, or (2) disqualified from testifying to the matter, or (3) unable to be present or to testify at the hearing because of death or then existing physical or mental illness, or (4) absent beyond the jurisdiction of the court to compel appearance by its process, or (5) absent from the place of hearing because the proponent of his or her statement does not know and with diligence has been unable to ascertain his or her whereabouts."

The finding of unavailability of a witness is entirely within the court's discretion. *State v. Waite, Heard and Heard,* 223 Kan. 337, 341, 574 P.2d 1368 (1978); see *State v. Alderdice,* 221 Kan. 684, 687, 561 P.2d 845 (1977). In *Reich v. Reich,* 235 Kan. 339, 343, 680 P.2d 545 (1984), quoting *Stayton v. Stayton,* 211 Kan. 560, 562, 506 P.2d 1172 (1973), the court said:

" 'Judicial discretion is abused when judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court then it cannot be said that the trial court abused its discretion. All judicial discretion may thus be considered as exercisable only within the bounds of reason and justice in the broader sense, and only to be abused when it plainly overpasses those bounds.' "

Carpentiere, a fellow jail inmate, was alleged to have made the statement in 1982. Jail inmates as a group tend to be transient and rather more difficult to locate years later than the population at large. Defendant just assumed Carpentiere had remained in the penitentiary (apparently going to that institution from the Morris County jail). In fact, Carpentiere had been out of the penitentiary for about three years. No effort was made to locate the witness until the day before trial. Under the totality of the circumstances herein, we find no abuse of discretion in the trial court's refusal to admit Carpentiere's statements to the KBI agent.

For his fourth claim of error, defendant contends the trial court improperly admitted a statement he made to an officer shortly after his arrest.

The circumstances involved were as follows. Defendant was arrested by a deputy sheriff and a sheriff's investigator (Larry Wells). Defendant was advised of his *Miranda* rights at the time of his arrest and again after being placed in the sheriff department's vehicle for transportation to jail. Upon his arrival at the jail, defendant's handcuffs were removed and he was seated in Wells' office. The two were waiting for the deputy to return with some photocopies. Wells read the charges against Ransom contained in the warrant and stated, "Man, you sure got a lot of charges on this thing." Ransom then stated, "I was just f _ _ _ _ _ _ up." Wells testified he was not interrogating the defendant and that the absent officer was going to do that on his return. Further, Wells testified his comment about the number of charges was just a personal comment rather than a question.

Following a *Jackson v. Denno* hearing, the trial court ruled the statement was admissible because: (1) defendant had twice been advised of his rights; (2) Investigator Wells did not expect a response; (3) the situation was not an interrogation; and (4) the response was voluntary and not coerced in any way.

The defendant relies on *Rhode Island v. Innis*, 446 U.S. 291, 64 L. Ed. 2d 297, 100 S. Ct. 1682 (1980), to demonstrate error requiring reversal; *Innis* involved a situation in which the defendant had been arrested, advised of his Miranda rights and *had stated he wanted a lawyer.* The arresting officers then made certain comments to each other and the defendant made a statement about the location of the gun used in the crime for which

defendant had been arrested. In *Innis*, the U.S. Supreme Court held that no interrogation was taking place when defendant made his comment and that the statement was admissible.

In the case before us, defendant Ransom had been twice read his rights, was not being interrogated, had not requested a lawyer, and was simply commenting on an opinion expressed by Wells. We find no error in the admission of Ransom's comment to Investigator Wells.

For his fifth issue defendant contends that the trial court erred in refusing to grant him a new trial for violation of the court's sequestration order by prosecution witnesses.

The trial herein was the first televised trial in Geary County. The media had a "Media Room" in which a television monitor was located. Some witnesses watched the monitor from time to time. The audio was very low or off most of the time.

Violation of a court order separating witnesses does not ordinarily disqualify a witness from testifying and the trial court, in its discretion, may admit the testimony. *State v. Johns*, 237 Kan. 402, 407, 699 P.2d 538 (1985); *State v. Handley*, 234 Kan. 454, 673 P.2d 1155 (1983).

Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court then it cannot be said that the trial court abused its discretion. All judicial discretion may thus be considered as exercisable only within the bounds of reason and justice in the broader sense, and only to be abused when it plainly overpasses those bounds. *Reich v. Reich*, 235 Kan. at 343.

In the case before us the evidence is very confusing as to who may have seen or heard what testimony. Nothing is presented tending to establish any prejudicial violation of the sequestration order. We find no abuse of discretion in the trial court's refusal to grant a new trial as a result of any viewing by witnesses of the television monitor.

For his sixth issue defendant challenges the sufficiency of the evidence supporting the conviction of aggravated kidnapping.

"On appellate review of a criminal conviction, the question presented is whether all of the evidence adduced at the trial, when viewed in the light most

favorable to the prosecution, convinces the appellate court that a rational fact-finder could have found the accused guilty beyond a reasonable doubt." *State v. Fosnight*, 235 Kan. 52, Syl. ¶ 2, 679 P.2d 174 (1984).

## K.S.A. 21-3420 defines kidnapping as follows:

"Kidnapping is the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person:

(a) For ransom, or as a shield or hostage; or

(b) To facilitate flight or the commission of any crime; or

(c) To inflict bodily injury or to terrorize the victim or another; or

(d) To interfere with the performance of any governmental or political function."

## K.S.A. 21-3421 defines aggravated kidnapping as follows:

"Aggravated kidnapping is kidnapping, as defined in section 21-3420, when bodily harm is inflicted upon the person kidnapped."

The jury was instructed that to establish the crime of aggravated kidnapping the State must prove that defendant took or confined the victim with intent to hold the victim *"to facilitate the commission of the crime of rape."*

In *State v. Buggs*, 219 Kan. 203, 547 P.2d 720 (1976), we held:

"[I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:

(a) Must not be light, inconsequential and merely incidental to the other crime;

(b) Must not be of the kind inherent in the nature of the other crime; and

(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.

"For example: A standstill robbery on the street is not a kidnapping; the forced removal of the victim to a dark alley for robbery is. The removal of a rape victim from room to room within a dwelling solely for the convenience and comfort of the rapist is not a kidnapping; the removal from a public place to a place of seclusion is. The forced direction of a store clerk to cross the store to open a cash register is not a kidnapping; locking him in a cooler to facilitate escape is. The list is not meant to be exhaustive, and may be subject to some qualification when actual cases arise; it nevertheless is illustrative of our holding." 219 Kan. at 216.

The mile-long chase of the victim by the defendant obviously cannot be considered a kidnapping. Any kidnapping must have occurred after the defendant made actual contact with the victim. The victim testified the defendant, after getting off the running board of the truck, took hold of her hair and the back of her neck and walked her down the road until the truck had been driven out of sight. Then defendant severely beat her and raped her

twice. The violence took place on the road—first one side and then the other. On cross-examination the victim stated:

"Q.  . . . Oh, by the way, Mr. Ransom never took you anyplace out there, did he?

"A.  No.

"Q.  He caught up with you on the road and that's where this thing occurred?

"A.  Yes.

"Q.  He never hauled you off to another location?

"A.  No, he didn't.

"Q.  It happened right where he caught you on the road?

"A.  Yes, just from one side of the road to the other, but right there.

"Q.  All in that one vicinity; the rape, the fight, the kicking?

"A.  Yes.

"Q.  The battery and everything occurred there?

"A.  Yes.

"Q.  After he raped you twice, he then proceeded to walk down the road the same way he'd come?

"A.  Yes."

The rapes and aggravated battery occurred on a section of the road—first on one side and then the other. Clearly, no kidnapping occurred in this activity. The only possible time sequence in which a kidnapping could have occurred is in the period of time when the defendant took hold of the victim's hair and neck and walked her down the road. No evidence of time or distance involved was presented at trial relative to the "walking."

The victim's direct testimony indicates she started screaming when Ransom stepped off the truck and the defendant immediately started threatening her. The "walk" took her closer to an improved blacktop road. She could see the road from the spot where the rapes occurred (approximately one-quarter mile away). The victim's testimony relative to the "walk" was as follows:

"Q.  Did the man ever physically grab ahold of you?

"A.  Yeah.

"Q.  What happened?

"A.  He grabbed ahold of my neck and was choking me, walked a little ways 'til that truck got out of sight. It was down the road a ways, until it, I don't know where it went. I didn't, you know, pay any attention. It just left, and then he, he was just real mad 'cause I made him run that far. And he was hitting me and pulled, you know, pulling my hair and . . . ."

It is difficult to see how the "walk" facilitated the commission of the crime. Apparently, the victim was screaming and being

choked before the truck left. The direction of the walk was nearer to the blacktop road where, presumably, detection of the crime in progress and assistance for the victim might be more likely to occur.

The rapes and aggravated battery herein were vicious, brutal crimes, but the question before us is whether, in addition, an aggravated kidnapping occurred. We must conclude that the evidence herein was insufficient to satisfy the three-pronged *Buggs* test. The "walk" had no significance independent of the rape and did not make the rape substantially easier of commission. The conviction for aggravated kidnapping must, accordingly, be reversed.

Defendant's seventh claim of error is the refusal of the trial court to give a requested instruction relative to the aggravated kidnapping charge. Inasmuch as that conviction has been reversed on the ground of insufficiency of the evidence, we need not determine this issue.

The eighth claim of error is the trial court's refusal to grant a motion for new trial grounded on newly discovered evidence. The evidence established that shortly prior to the crimes herein defendant had a beard and that shortly after the crimes the defendant was clean shaven. After trial defendant sought a new trial based on four photographs he said had been mailed to him, after the trial, by a Cathie Glessner. Defendant stated they were taken during the weekend in question. Ms. Glessner did not testify at the hearing.

The rules governing the granting of a new trial based on newly discovered evidence were recently restated in *State v. Hobson*, 237 Kan. 64, 66, 697 P.2d 1274 (1985), as follows:

"K.S.A. 22-3501(1) permits a district court to order a new trial on the ground of newly discovered evidence. The rules governing these motions were set forth in *State v. Johnson*, 222 Kan. 465, 565 P.2d 993 (1977):
'The granting of a new trial for newly discovered evidence is in the trial court's discretion. (*State v. Larkin*, 212 Kan. 158, 510 P.2d 123, *cert. den.* 414 U.S. 848, 38 L. Ed. 2d 95, 94 S. Ct. 134.) A new trial should not be granted on the ground of newly discovered evidence unless the evidence is of such materiality that it would be likely to produce a different result upon re-trial. (*State v. Hale*, 206 Kan. 521, 479 P.2d 902.) The credibility of the evidence offered in support of the motion is for the trial court's consideration. (*State v. Anderson*, 211 Kan. 148, 505 P.2d 691; *State v. Larkin*, [212 Kan. 158].) The burden of proof is on defendant to show the alleged newly discovered evidence could not with reasonable diligence have been produced at trial. (*State v. Lora*, 213 Kan. 184, 515 P.2d 1086,

*State v. Arney*, 218 Kan. 369, 544 P.2d 334.) The appellate review of an order denying a new trial is limited to whether the trial court abused its discretion. (*State v. Campbell*, 207 Kan. 152, 483 P.2d 495; *State v. Anderson*, [211 Kan. 148.])' p. 471.

These rules have been repeated by the court many times, most recently in *State v. Richard*, 235 Kan. 355, 363, 681 P.2d 612 (1984). In *Richard* we also stated '[a] new trial is not granted on the basis of newly discovered evidence which merely tends to impeach or discredit the testimony of a witness.' 235 Kan. at 363."

Identity was not the major issue at trial—rather the big issue was whether or not any crimes occurred. Defendant testified Ms. B drove up near his "party" and got stuck in the mud and left on foot. Defendant testified Ms. B was chased by him and others to tell her they would get her car out of the mud. Defendant corroborated the victim's statement about getting a ride on the pickup truck and thereby catching up with her. Defendant testified the victim was "hysterical" when he approached her. Defendant testified the following occurred:

"Q.    What did you do?
"A.    Well, at that time I was, the only thing I could think of, went through my head that, 'What do they always do whenever a girl goes hysterical,' they slap her on the face and they come around.
"Q.    Well now, where did you hear that?
"A.    Well, watching movies, that's—
"Q.    (Interruption) Well, what did you do?
"A.    —I slapped her in the face.
"Q.    How many times?
"A.    Just once.
"Q.    What was her reaction to that?
"A.    It made things worse.
"Q.    Are you telling this Court and jury you slapped a strange girl you'd never seen, in the face?
"A.    Yes, sir, I am.
"Q.    And it didn't do any good?
"A.    Yes, sir.
"Q.    Yes, sir, it didn't do any good?
"A.    Right.
"Q.    Okay. Well, what did you do?
"A.    At that time?
"Q.    Yeah.
"A.    I just let her go and went back to the, went— walked a few feet down the road there and cut across the field to go back to the party."

We find no abuse of discretion in the trial court's refusal to grant a new trial on the basis of newly discovered evidence.

For his ninth and final point defendant contends the jury was improperly instructed on an inference of intent.

The instruction in issue is No. 14 which states:

"Ordinarily a person intends all of the usual consequences of his voluntary acts. This inference may be considered by you along with all the other evidence in the case. You may accept or reject it in determining whether the State has met its burden to prove the required criminal intent of the defendant. This burden never shifts to the defendant."

Defendant relies on *Wiley v. Rayl*, 767 F.2d 679 (10th Cir. 1985), and *Francis v. Franklin*, 471 U.S. 307, 85 L. Ed.2d 344, 105 S. Ct. 1965 (1985), to establish that the above instruction is an erroneous "rebuttable presumption" instruction. He concedes this instruction was not objected to but argues it is clearly erroneous.

This court had occasion to discuss both the *Wiley* and *Franklin* decisions in *State v. Mason*, 238 Kan. 129, 708 P.2d 963 (1985), wherein we stated:

"After the briefs were filed in this case, the United States Supreme Court announced its opinion in *Francis v. Franklin*, 471 U.S. 307, 85 L. Ed. 2d 344, 105 S. Ct. 1965 (1985), and diligent counsel for the appellant have called that case to our attention as well as a more recent case of the United States Court of Appeals for the Tenth Circuit, which we will discuss later in this opinion. In *Francis*, the court stated the issue before it as follows:

" 'This case requires that we decide whether certain jury instructions in a criminal prosecution in which intent is an element of the crime charged and the only contested issue at trial satisfy the principles of *Sandstrom v. Montana*, 442 U.S. 510, 62 L. Ed. 2d 39, 99 S. Ct. 2450 (1979). Specifically, we must evaluate jury instructions stating that: (1) "[t]he acts of a person of sound mind and discretion are presumed to be the product of a person's will, but the presumption may be rebutted" and (2) "[a] person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts, but the presumption may be rebutted." App. 8a-9a. The question is whether these instructions, when read in the context of the jury charge as a whole, violate the Fourteenth Amendment's requirement that the State prove every element of a criminal offense beyond a reasonable doubt.' 471 U.S. at _____. (85 L. Ed. 2d at 350.)

"It is interesting to note that intent was not only an element of the crime charged but 'the only contested issue at trial.' The court noted that the instruction concerning the presumption was cast in mandatory language, followed by a statement that the presumption 'may be rebutted.' The court concluded:

" 'When combined with the immediately preceding mandatory language, the instruction that the presumptions "may be rebutted" could reasonably be read as telling the jury that it was required to infer intent to kill as the natural and probable consequence of the act of firing the gun unless the defendant persuaded the jury that such an inference was unwarranted. The very statement that the presumption "may be rebutted" could have indicated to a reasonable juror that the defendant bore an affirmative burden of persuasion once the State proved the underlying act giving rise to the presumption. Standing alone, the challenged

language undeniably created an unconstitutional burden-shifting presumption with respect to the element of intent.' 471 U.S. at _____. (85 L. Ed. 2d at 356.)

"The court then went on to hold that the trial court's general instructions did not cure the defect and that, under the facts of the case, intent being the primary issue at trial, the giving of the instruction was not harmless error.

"Following the publication of the Supreme Court's opinion in *Francis*, the United States Court of Appeals for the Tenth Circuit announced its decision in *Wiley v. Rayl*, 767 F.2d 679 (10th Cir. 1985). Wiley was convicted in the District Court of Butler County of rape and aggravated kidnapping. Upon exhaustion of his state remedies, he sought habeas corpus in the federal courts under 28 U.S.C. § 2254 (1982), contending among other things that his due process rights were violated by the trial court when it instructed the jury:

" ' "There is the presumption that a person intends all of the natural and probable consequences of his voluntary acts. This presumption is overcome if you are persuaded by the evidence that the contrary is true." ' 767 F.2d at 681. Wiley objected to the instruction at trial. The Kansas Supreme Court heard the case after the *Sandstrom* opinion was published and found no *Sandstrom* violation. *State v. Wiley*, No. 50,726, unpublished opinion filed July 18, 1980, *cert. denied* 449 U.S. 1087, *reh. denied* 451 U.S. 977 (1981). The Tenth Circuit, noting that intent was an issue and the challenged instruction was specifically argued to the jury in the prosecution's closing argument, vacated Wiley's kidnapping conviction. It found that the trial court's instruction violated the rule of *Francis v. Franklin*, and 'effectively removed from the state the task of proving, and from the jury the duty of determining, that the defendant had the requisite intent to kidnap.' 767 F.2d at 683." 238 Kan. at 136-37.

The instruction given in the case before us is PIK Crim. 2d 54.01 and was not the intent instruction given in *Mason*. Even disregarding the fact that intent was not a big issue at trial on the rape, aggravated battery, and theft charges, the instruction on intent herein clearly creates a permissible inference rather than a rebuttable presumption and is, therefore, not constitutionally improper.

The conviction of aggravated kidnapping is reversed, and the balance of the judgment is affirmed.

HERD, J., dissenting: I disagree with the majority's reversal of Peter H. Ransom's conviction for aggravated kidnapping and would find there was sufficient evidence to support the conviction.

The evidence showed that Ransom, like an enraged animal, chased the terror stricken victim for approximately one mile. At that point, an old pickup truck approaching from the opposite direction met the victim. She was afraid to seek the driver's assistance since his appearance was similar to Ransom's. After

meeting the victim the vehicle proceeded down the road, then stopped for Ransom, who climbed on the running board and had the driver back his vehicle up the road to the victim. Ransom then jumped off the pickup, forcefully grabbed the victim from behind by the neck and hair, and walked with her for a way until the pickup was out of sight. Ransom then dragged the victim back and forth across the road, choked her, burned her hair, and finally brutally raped her twice.

The majority opinion states the only possible time sequence in which a kidnapping could have occurred is in the period of time when Ransom took hold of the victim's hair and neck and walked her down the road. However, the majority then states: "No evidence of time or distance involved was presented at trial relative to the 'walking.'" With this statement the majority reverses the often-repeated rule that K.S.A. 21-3420 requires no particular distance or removal, nor any particular time or place of confinement. Rather, it is the *fact and not the distance* of the taking that supplies the necessary element of kidnapping. As we stated in *State v. Buggs*, 219 Kan. 203, 547 P.2d 720 (1976):

"Our kidnapping statute, K.S.A. 21-3420, requires no particular distance of removal, nor any particular time or place of confinement. Under that statute it is the fact, not the distance, of a taking (or the fact, not the time or place, of confinement) that supplies a necessary element of kidnapping." Syl. ¶ 7.

"Under K.S.A. 21-3420 a taking or confining is a kidnapping if its purpose is to 'facilitate' the commission of any crime, even if the crime facilitated be a less serious crime such as robbery or rape." Syl. ¶ 8.

"The word 'facilitate' in K.S.A. 21-3420 means something more than just to make more convenient. A taking or confining, in order to be said to 'facilitate' a crime, must have some significant bearing on making the commission of the crime 'easier.'" Syl. ¶ 9.

"If a taking or confining is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:

. . . .

"(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection." Syl. ¶ 10.

See also *State v. Bourne*, 233 Kan. 166, 168, 660 P.2d 565 (1983) (movement of children from one bedroom to an adjoining bedroom for purposes of rape and indecent liberties constituted aggravated kidnapping); *State v. Chears*, 231 Kan. 161, 164, 643 P.2d 154 (1982) (movement of sodomy victim from living room to bedroom was sufficient evidence of kidnapping); *State v. Fer-*

*guson, Washington & Tucker,* 228 Kan. 522, 528, 618 P.2d 1186 (1980) (movement of rape victims from back room of shop to adjoining parking lot was sufficient evidence of kidnapping).

The jury was instructed that to establish the crime of kidnapping the State must prove Ransom took or confined the victim with the intent to hold the victim to facilitate the commission of the crime of rape. The majority finds it "difficult to see" how the walk facilitated the commission of the crime and notes that the victim was screaming and being choked before the truck left. As we pointed out in *State v. Royal,* 234 Kan. 218, 224, 670 P.2d 1337 (1983), the fact that a kidnapping victim keeps fighting and screaming does not lessen the offense.

In taking the victim by the neck and forcing her to walk away from the truck until the truck was out of sight, Ransom was clearly attempting to insure that the driver of the pickup truck did not witness the rape or interfere with his intended acts. He lessened the risk of detection by his taking and confining the victim. Thus, there was sufficient evidence for the jury to conclude Ransom moved the victim to facilitate the crime of rape.

The majority has chosen to disregard the standard of review to be applied when sufficiency of the evidence is challenged. We recently set forth that standard in *State v. Jackson,* 238 Kan. 793, 799, 714 P.2d 1368 (1986):

> "When the issue of the sufficiency of the evidence to support a conviction is raised, the standard of review on appeal is whether the evidence, when viewed in a light most favorable to the prosecution, convinces the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *The appellate court looks only to the evidence in favor of the verdict to determine if the essential elements of the charge are sustained."*

There is no minimum distance of asportation required to prove kidnapping; therefore, the evidence that Ransom grabbed the victim by the hair and neck and walked her down the road was sufficient to establish a "taking or confining." Moreover, the evidence that Ransom continued to "walk" the victim until the truck was out of sight was sufficient to show Ransom took or confined the victim with "the intent to facilitate the crime of rape." The evidence was sufficient to establish the essential elements of the crime of aggravated kidnapping. I find no evidence of mitigating circumstances which justify our treating

Ransom more leniently than we have treated other like criminals. I would affirm the jury's verdict.

MILLER, J., joins in the foregoing dissent.