No. 70,539

STATE OF KANSAS, *Appellee*, v. JOHN L. HALLOWAY, *Appellant*.
(886 P.2d 831)

Opinion filed December 9, 1994.

*J. Patrick Lawless, Jr.*, assistant appellate defender, argued the cause, and *M. Kristine Paredes*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, were on the brief for appellant.

*Doyle Baker*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Robert T. Stephan*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is a direct appeal by John L. Halloway from his convictions of one count of aggravated kidnapping and two counts of rape. The defendant challenges the sufficiency of the evidence.

R.M. voluntarily left her house with the defendant to get a beer. Several blocks from her house, the defendant told her he in-

tended to rape and kill her. R.M. attempted to get out of the defendant's car, but the passenger door did not have an inside handle. The defendant drove to a sparsely populated area of Wichita, and the car became stuck on the railroad tracks 20 to 25 feet off the main highway. R.M. ran to the highway, but the defendant forced her back to his car. The defendant hit R.M. several times with what she called a crowbar and others described as a jack handle. R.M. sustained two injuries to her head requiring stitches, one of which exposed the skull bone. The defendant then dragged R.M. into the woods and engaged in vaginal intercourse. They then began walking toward the main part of town, and some distance from the car the defendant again engaged in vaginal intercourse with R.M.

The defendant admitted he engaged in intercourse with R.M. but testified it was consensual and occurred earlier in the evening before he struck her on the head six to eight times with the jack handle.

## I. AGGRAVATED KIDNAPPING

The defendant argues that any confinement that occurred was inherent in the commission of rape and was not a separate and distinct offense.

Our standard of review is as follows:

"When the sufficiency of the evidence is challenged in a criminal case, the standard of review on appeal is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. McDonald*, 250 Kan. 73, Syl. ¶ 7, 824 P.2d 941 (1992).

The present case was tried to the court. In a trial to the court, it is the trial judge's function, and not an appellate court's, to weigh the evidence and pass upon the credibility of witnesses. See *State v. Holley*, 238 Kan. 501, 511, 712 P.2d 1214 (1986).

Aggravated kidnapping is kidnapping where bodily harm is inflicted on the victim. K.S.A. 21-3421. K.S.A. 21-3420 defines kidnapping in relevant part as "the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person . . . [t]o facilitate flight or the commission of any

crime." That bodily harm was inflicted is not disputed. The sole question is whether there was a taking or confining that occurred in order to facilitate the crime of rape or whether any taking or confining was incidental to the rape.

Both the defendant and the State cite language from *State v. Buggs*, 219 Kan. 203, 547 P.2d 720 (1976). In *Buggs*, this court discussed the extent of taking or confining necessary to support a conviction for kidnapping. We held:

"The word 'facilitate' in K.S.A. 21-3420 means something more than just to make more convenient. A taking or confining, in order to be said to 'facilitate' a crime, must have some significant bearing on making the commission of the crime 'easier.' "

"If a taking or confining is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:

(*a*) Must not be slight, inconsequential and merely incidental to the other crime;

(*b*) Must not be of a kind inherent in the nature of the other crime; and

(*c*) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection." 219 Kan. 203, Syl. ¶¶ 9, 10.

In *Buggs*, the victims were accosted outside a Dairy Queen at the fringe of the parking lot, where they were subject to public view. The defendants forced them to return to the relative seclusion of the inside of the restaurant, although the robbery could have been accomplished outside the store or without forcing the victims into the store. This court held that the movement from outside the restaurant to inside the restaurant substantially reduced the risk of detection and was a taking or confining necessary to facilitate the commission of a robbery and a rape. 219 Kan. at 216-17. This court also gave examples, subject to qualification, of the extent of taking or confining necessary to support a kidnapping:

"For example: A standstill robbery on the street is not a kidnapping; the forced removal of the victim to a dark alley for robbery is. The removal of a rape victim from room to room within a dwelling solely for the convenience and comfort of the rapist is not a kidnapping; the removal from a public place to a place of seclusion is. The forced direction of a store clerk to cross the store to open a

cash register is not a kidnapping; locking him in a cooler to facilitate escape is." 219 Kan. at 216.

The defendant argues that any taking or confining which occurred in this case was merely for convenience and did not facilitate the crime of rape or substantially lessen the risk of detection. The State argues that the defendant deceived R.M. into leaving her home where a number of other persons were present, and he reduced the risk of detection by taking R.M. to a remote area on the outskirts of Wichita. When R.M. attempted to flee, the defendant repeatedly hit her with a tire iron and dragged her into the woods to rape her.

In *State v. Ransom*, 239 Kan. 594, 722 P.2d 540 (1986), and *State v. Cabral*, 228 Kan. 741, 619 P.2d 1163 (1980), upon which the defendant relies, this court found the factual situations insufficient to satisfy the *Buggs* test. In *Ransom*, 239 Kan. 594, this court reversed the defendant's conviction for aggravated kidnapping. The defendant chased the victim and when he caught her, he "walked" the victim down a road and raped her, once on each side of the road. The direction of the walk took the defendant and his victim nearer an improved blacktop road, which would presumably increase the risk of detection rather than decrease it. This court held that the "walk" had no significance independent of the rape and did not make the rape substantially easier of commission. 239 Kan. at 602-03. In *Cabral*, 228 Kan. 741, the victim voluntarily got into the defendant's car and drove around with him for some time. As the defendant was taking the victim back to the dormitory where she was staying, he drove into a park, grabbed her arm, locked the door, and drove behind a tree and raped her. This court held that there was not a kidnapping separate and independent of the rape. We stated: "When forcible rape occurs in an automobile, of necessity, some confinement of the woman is a necessary part of the force required in the commission of the rape. Such a confinement is of a kind inherent in the nature of forcible rape and incidental to the commission of the rape." 228 Kan. at 744-45.

Both *Ransom* and *Cabral* are distinguishable from the facts in the case at bar. Unlike in *Cabral*, R.M. was not the defendant's

willing companion for the entire period of time before the rape. The defendant's car became lodged on a railroad track and could not be extracted. R.M. escaped from the defendant and went to the highway, but the defendant hit her with a jack handle or crowbar and forced her to return to the car. The defendant did not rape R.M. in his car, which would have been more convenient. Instead, he dragged her into the woods, away from the highway. Unlike the movement in *Ransom*, moving R.M. into the woods to rape her substantially lessened the risk of detection.

After R.M. tried to escape, the defendant beat her with a tire iron and dragged her from the highway to the car and then into the woods, where he raped her. The taking or confining was not a kind inherent in and incidental to the rape, and it was not merely for convenience. It facilitated the crime of rape by substantially lessening the risk of detection. There was sufficient evidence from which a rational factfinder could have found the defendant guilty beyond a reasonable doubt of aggravated kidnapping.

## II. TWO COUNTS OF RAPE

The defendant also contends that the evidence was insufficient to support his convictions of two counts of rape. He points to inconsistencies in R.M.'s story and the evidence obtained by the police: R.M. testified that she threw her bra on a tree in the woods and she told the police the defendant put her bra on the tree, but the police actually discovered the bra in the defendant's car; a condom was found in the defendant's car, supporting his claim of consensual sexual intercourse; there were three sets of footprints at the scene; R.M. asked the defendant to walk her home and waited on the defendant while he was getting sick rather than running away; and R.M. did not tell the police she was raped two times but rather her trial testimony was the only evidence of the second rape.

The State points out that the first rape occurred after the defendant threatened to kill R.M. and beat her into submission with a tire iron. The second rape occurred in an open field some distance from the place where the first rape occurred. The defendant

told R.M. she would have vaginal intercourse or be forced to "give him head or get fucked in the ass." The State acknowledges the inconsistencies in R.M.'s story but also points out that the defendant's claim the two had engaged in consensual sexual intercourse earlier in the evening fails to explain why R.M.'s bra and the defendant's underwear had blood on them, which is inconsistent with his testimony that the consensual sex took place before he hit her on the head six or eight times with a jack handle.

On appeal, this court will not reweigh the evidence or pass upon the credibility of witnesses; that is the job of the trier of fact. See *Holley*, 238 Kan. at 511. Before pronouncing the defendant guilty, the trial judge acknowledged that there were inconsistencies in both R.M.'s and the defendant's stories. Some of the testimony and physical evidence was inconsistent or unexplained. However, our review of the evidence, viewed in the light most favorable to the prosecution, reveals sufficient evidence upon which a rational factfinder could have found the defendant guilty beyond a reasonable doubt of two counts of rape.

Affirmed.